Case 67—PROSECUTION AGAINST THE JUNG BREWING COMPANY FOR MAINTAINING A PUBLIC NUISANCE, OCT., 12.

## Jung Brewing Co. v. Commonwealth.

Appeal from Laurel Circuit Court.

H. C. FAULKNER, Circuit Judge

Defendant convicted and appeals. Affirmed.

Public Nuisance—Selling Liquor—Suffering Disorderly Crowds Near Premises—A corporation though having a license to sell whisky by wholesale or even by retail, in a small town, has no right to allow the assembling around its premises of noisy, drunken boisterous crowds, whose insolence and profanity made the use of the highway in the neighborhood, by women, always unpleasant and some times dangerous, and may be indicted for maintaining a public nuisance on its premises.

J. W. ALCORN, for appellant.

N. B. HAYS, Atty. Gen'l. and LORAME MIX, for Commonwealth.

OPINION BY JUDGE BARKER.—Affirming.

The appellant corporation, Jung Brewing Company, was indicted by the grand jury of Laurel county, charged with maintaining a public nuisance on its premises in the town of Pittsburg, Laurel county, Ky. Upon trial it was found guilty by the jury, and a fine of $500 inflicted by the verdict.

The evidence on the trial showed that Pittsburg is a small mining town without police or town authorities, situated in a local option district; that some months before the indictment herein was found, the Jung Brewing Company rented the house referred to, which is near the center of the town and not far from the church or schoolhouse on one of the main thoroughfares of the town; that it kept in the house beer for sale by the case or keg (one Hocker being the agent), and also kept a wagon to deliver the goods. A keg of beer was sold for $2.00, and a case for $3.30; the case consisting of 36 quart bottles, which were to be returned by the purchaser. Crowds of men, mostly miners, ranging from 10 to 25 or over in number, would collect in the street in front of the house; some one would go in and get a case of beer and bring it out in the street, or on the railroad property just across the street, where, in view of the house from which it was purchased, it would be divided among those who had made up the money, and the beer would then be drunk, the crowd getting intoxicated, boisterous, and disorderly, and continuing in the street and about the porch of the house for hours. This was a frequent occurence, so that women avoided the street, and the public passing there was disturbed. The town postoffice was nearby, and the schoolhouse was not far off. The crowd sometimes went in the house or on the porch. The agent, Hocker, to get rid of them, on some occasions closed up the house. Sometimes the beer was carried off in sacks and sometimes in the original case. The disorderly crowd could be seen

from the house dividing the beer.  One witness testi-
fied to a division made in the house, and other divis-
ions were made in the street within 10 feet of the
house. The sales were not made to retail dealers, but
to miners who could not afford to buy so much beer
individually. At other times the beer was taken fur-
ther away.  Sometimes it was sent by a wagon to a
grove some distance off, and there divided.  Such
was in substance the evidence for the commonwealth.
The evidence for the defendant was to the effect that
there was no disorder in the house, and that Hocker
sold the beer by the wholesale, in quantities not less
than five gallons; also that the crowd about the house
and in the street was not drunk or disorderly or pro-
fane.  But the evidence for the commonwealth tended
to show that for some months the selling of beer
in this way at the house had caused this disorderly
crowd to collect, and that instead of a local option
community, where intoxicants could not lawfully be
sold, beer was sold freely, and in a more objection-
able manner than if the local option law had not been
in force, causing a serious public nuisance.

The question involved on the trial of this case was
not whether the defendant violated the local option
law. It is not charged with that offense, but whether or
not, within the time mentioned in the indictment, it
had maintained a common nuisance at the place
named therein.  The evidence of the commonwealth
upon the trial, if true, established the offense with
which the defendant was charged beyond doubt.  Con-
ceding that it had a right to sell liquor by wholesale,
or even that it was an authorized retailer, it had no
right to allow the assembling around its premises of
noisy, drunken, boisterous crowds, whose "swilled
insolence" and profanity made the use of the high-
way in that neighborhood, by women, always un-
pleasant and sometimes dangerous.  The saturnalian
orgies described by the women who testified for the

commonwealth upon the trial below accentuates the great importance to the public peace and safety that the laws regulating the sale of liquor in mining towns should be enforced with a firm hand and the strictest integrity. The sale of liquor in a community such as is involved here is almost as dangerous as the handling of fire in the neighborhood of powder, and, therefore, it is incumbent upon those who sell it in such localities to see that the business is conducted in a lawful manner, and to exercise the utmost watchfulness that the public peace be not endangered.

A careful reading of this record convinces us that the appellant had a fair and impartial trial, and that no injury was done it, either in the rulings of the court, or by the verdict of the jury.

Judgment is affirmed.