JOSEFA BONIEWSKY, ADMINISTRATRIX OF THE ESTATE OF FRANK BONIEWSKY, RESPONDENT, v. POLISH HOME OF LODI, A CORPORATION, APPELLANT

Submitted October 29, 1926—Decided March 24, 1927.

1. The act of 1922 (*Pamph. L., p.* 628) is an independent act giving cause of suit to an injured person, or to the representative of his estate.
2. Such action under that act is, among other things, given to anyone injured in person, property or means of support; and it is further provided that in case of the death of any person, who may have suffered, or may have inflicted such injury, both actual and exemplary damages may be recovered, and the right of action given by the act shall survive to or against the representatives of the decedent, that is, an executor or administrator.
3. If an action is prosecuted by an administratrix *ad prosequendum*, under the act of 1917 (*Pamph. L., p.* 531), an amendment should be allowed changing the character of the plaintiff to general administratrix, so that the suit may proceed under the act of 1922, if it be brought under the latter.
4. There should be no amendment admitting the widow and next of kin of decedent as plaintiffs in a cause under the act of 1922, as recovery is to be for their benefit, and is to be distributed to them in certain proportions as in the act mentioned, and such an amendment will be disallowed.
5. An amendment or amendments made upon a trial must always be returned with the *postea* in the case, that the court of original

323

jurisdiction and an appellate court may know what has been done in that regard at Circuit.

6. An amendment or amendments may be ordered to be made in an appellate court in aid of a verdict and to sustain a judgment, and this is extended even to matters hoped and intended to be tried in the case, and is not limited to matter within the issue upon the record.

7. The act of 1922 is really supplementary to the Death act, and under it two causes of action, one for the benefit of the estate of the deceased, and the other for the benefit of persons specially designated as distributees under the act, may be joined; but two distinct causes of action, for those damages, should be set out as separate counts in the complaint.

8. The title of an act is in the nature of a label by which its object is displayed: it is not a table of contents or an index of everything that the statute contains.

9. It makes no difference that a provision of an act is contained in a *proviso;* words found in a *proviso* may strengthen and support a construction of the act itself.

10. The act of 1922 creating a new cause for action, and giving a remedy therefor, being remedial in its nature, like the Death act, is to be liberally and beneficially expounded.

11. The act of 1922 (*Pamph. L., p.* 628) justifies the prosecution of the case at bar by a general administratrix, and is constitutional.

12. If inadmissible evidence has been received during a trial, the error of its admission is cured by its subsequent withdrawal before the trial closed, by an instruction to the jury, or even by an instruction to disregard it, without more, such latter instruction being equivalent to striking out the improper evidence.

13. Where the evidence admitted is so impressive that in the opinion of the appellate court its effect is not removed from the minds of the jury by its subsequent withdrawal or instruction by the court to disregard it, the judgment will be reversed on account of its admission; but, obviously, where such testimony could have no such effect, it is immaterial and harmless, because it could not have injuriously affected the substantial rights of the appellant. *Held,* harmless and immaterial in this case.

14. There was no error in refusing to nonsuit or to direct a verdict for defendant, because there was evidence when the plaintiff rested, which still persisted when the whole case was submitted, from which it could reasonably and properly be inferred that the deceased met his death as the result of alcoholic liquor obtained from the defendant, or that such liquor contributed to his death.

15. A reason assigned for a new trial, that the verdict is contrary to the weight of the evidence (which reason is argued, considered and decided in the trial court on rule to show cause), is necessarily embraced within the exceptions to a refusal to nonsuit and to direct a verdict, which are reserved in the rule, and, therefore, such exceptions cannot be considered on appeal.

16. An appellate court, to sustain a judgment, may regard a verdict expressed in untechnical language as truly finding the fact or

facts in issue, or may mold a verdict itself, and affirm accordingly; but, where a verdict is to be changed to meet the facts which were introduced by amendment before the trial court, in order to support a judgment which will differ from one which might be entered on the issue sent down in the Circuit record, and which judgment must now be entered upon an amended verdict to be returned with an amended *postea*, the appellate court has power to require the judge who tried the case to mold the verdict and return it with such amended *postea*, so that such proper judgment may be entered.

17. The judgment under review will be affirmed, with direction to the attorney for the plaintiff to move in the trial court, and that court to grant (1) an amendment in writing substituting the plaintiff in her capacity as general administratrix of the decedent, with two counts in the complaint—(a) one alleging damages to the estate of the deceased in his lifetime, and (b) one alleging damages to the widow and next of kin by reason of his death, and striking out her capacity as administratrix *ad prosequendum;* (2) striking out the second amendment, substituting the widow and children of decedent to sue as parties plaintiff in the suit; (3) molding the verdict to be one in favor of the plaintiff as general administratrix (a) for $100 for the benefit of the estate of decedent, and (b) one finding for the plaintiff as general administratrix in the sum of $12,000 for the benefit of the widow and next of kin of the decedent under the act of 1922; (4) to return the amendment and molded verdict with a properly amended *postea;* (5) to then move in the Supreme Court for a judgment based upon the molded verdict, and in strict accordance therewith. For all of which the plaintiff-respondent may have costs, and, ultimately, an execution according to the course and practice of the Supreme Court.

---

On appeal from the Supreme Court.

For the appellant, *Ward & McGinnis.*

For the respondent, *Weinberger & Weinberger.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This suit was commenced in the Supreme Court and was referred for trial to the Bergen Circuit Court. It came before Judge Smith and a jury on the usual Circuit record, that is, a transcript of the pleadings in the Supreme Court. Two amendments were allowed upon the trial. Of them hereafter. The jury did not return the verdict

which is printed in the state of the case, but inspection of the transcript shows that they returned a verdict as follows:

"The above-entitled cause was tried before the Honorable William A. Smith and a jury on the 25th and 26th days of November, 1924, and the jury rendered two verdicts, one for $100 in favor of Josefa Boniewsky, administratrix, and against the defendant, the Polish Home of Lodi, a corporation, and one in the sum of $12,000 in favor of Josefa Boniewsky for herself and two infant children, to wit, Stella and Jennie Boniewsky, and against the defendant, the Polish Home of Lodi, a corporation."

There are not two verdicts here, but one with two subdivisions, and this is allowable.

No judgment is printed in the transcript, but, resort being again had to the record, we find a judgment rendered upon the above verdict as follows:

"Whereupon it is adjudged that the plaintiff, Josefa Boniewsky, administratrix *ad prosequendum* of the estate of Frank Boniewsky, do recover of the said defendant, Polish Home of Lodi, a corporation, the sum of one hundred dollars damages, and that the plaintiff, Josefa Boniewsky, for herself and two infant children, to wit, Stella and Jennie Boniewsky, do recover of the said defendant, Polish Home of Lodi, a corporation, the sum of twelve thousand dollars damages, together with their costs, which have been taxed at the sum of one hundred and four dollars and sixty one cents, making in the whole the sum of twelve thousand two hundred and four dollars and sixty-one cents."

These inaccuracies and omissions are contrary to rule, and are censurable.

Before the entry of the judgment in the Supreme Court the defendant-appellant obtained a rule to show cause why the verdict should not be set aside and a new trial granted. And the Supreme Court, after hearing (*Boniewsky* v. *Polish Home of Lodi*, 102 *N. J. L.* 241), discharged the rule to show cause, which reserved exceptions, and refused to hear the exceptions that were reserved, except damages and weight of evidence. Thereafter the above judgment was entered upon

the verdict above set out, and defendant appealed to this court, and assigned thirty-six grounds of appeal. Such grounds as are argued are presented under eight points. All the questions raised and argued are considered and decided in this opinion.

It is urged by defendant-appellant that the attempt to recover in this case was based upon *Pamph. L.* 1922, *p.* 628, and that it does not lie. That act is entitled:

"An act providing for a right of action to recover damages in cases where injury to person or property, means of support or otherwise, is caused by any intoxicated person, or by reason of the intoxication of any person, or by reason of the sale or procuring of intoxicating liquor in violation of law; providing for the survival of such right of action in the event of the death of any person who may have suffered or inflicted such injury, and fixing the method of distribution of damages that are recovered where death results from intoxication or from the sale or procuring of intoxicating liquor in violation of law."

A right of action in any court of competent jurisdiction is given in the first section of the act to anyone injured in person, property or means of support; and it is further provided that in case of the death of any person, who may have suffered or may have inflicted any such injury, that both actual and exemplary damages may be awarded. See *Boniewsky* v. *Polish Home of Lodi, supra.* And the right of action given by the act shall survive to or against the executor, administrator "of" personal representatives of the decedent. The executor or administrator is the personal representative of a decedent. The word "of" is a misnomer, it should have been "or;" but even that is superfluous.

This is like the second section of the act entitled "An act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default." *Pamph. L.* 1848, *p.* 151; 1 *Comp. Stat., p.* 1908, § 2, which provides that every such person (action) shall be brought by and in the names of the personal representatives of such deceased person. This, of course, is the executor or administrator of the decedent.

This particular action under *Pamph. L.* 1922, *p.* 628, was brought in the name of the plaintiff as administrator *ad prosequendum* of the decedent, and counted for damages in the complaint for the next of kin and heirs-at-law of the decedent. It, therefore, became necessary for the plaintiff to amend, as the act of 1922 provides only for suit in the name of a general administrator where death ensues, and in no case by an administrator *ad prosequendum;* and this she did on the trial. She obtained leave to amend so as to sue as general administratrix, having been appointed such before the action was brought. Then the suit properly proceeded in her name as general administratrix. Afterwards a further amendment was applied for and granted, so that the case should be one by the plaintiff as general administratrix and by the widow and next of kin of the decedent. Counsel for defendant said that he did not waive any legal right of his client's with respect to the status that the plaintiff was in as a result of the amendment. His position was that if the widow and next of kin had not a cause of action he would not admit that they had. In the colloquy between the court and counsel over this question of amendment the judge said: "Then you want an amendment so as to make the parties as administratrix and the widow and next of kin, and I suppose I should appoint the mother the guardian *ad litem* of the two children to prosecute the suit, so whatever judgment is obtained here will cover all the causes of action." And it appears that that was the order.

Now, the language of the act plainly states that if the death of any person results from intoxication, or from the sale or procuring of intoxicating liquor in violation of law, either directly or indirectly, such action shall be brought by and in the name of the personal representative of such decedent, and the amount recovered in every such action shall be for the exclusive benefit of the widow or of the surviving husband or next of kin of any such decedent and shall be distributed to such widow, surviving husband or next of kin in the proportion provided by law in relation to the distribution of personal property left by any person dying intestate.

The subsequent provisions relate to other persons entitled to damages—that is, the damages recovered by and in the name of the representative of the estate for the use of such persons.

There is not a line nor a word in the act to the effect that the widow, or next of kin, who may be entitled to damages under it, by reason of the death of the person injured, shall have any cause of action in their own names, although, of course, the action given is for their benefit. This is the same provision that is found in the Death act of 1848, and such actions have been uniformly so brought ever since. Therefore, it follows that the first amendment applied for was proper, and that the second applied for was improper.

These amendments should have been returned with the *postea*. It may be that if the defendant had objected to the amendment from administratrix *ad prosequendum* to general administratrix, that it might have prevailed, as it was substituting a new cause for action. See *Fitzhenry* v. *Consolidated Traction Co.,* 63 *N. J. L.* 142. See, also, *Lower* v. *Segal,* 59 *Id.* 66; *S. C.,* 60 *Id.* 99. The same rule applies in Chancery. See *Fodor* v. *Kunie,* 92 *N. J. Eq.* 301. But, whether so or not, the defendant appears to have consented to the amendment. In this case the court said to counsel for plaintiff: "Now, you want to amend your complaint?" Counsel for plaintiff: "To read instead of *ad prosequendum* * * * general administratrix. That is right." Thereafter defendant moved for a nonsuit on grounds not involving the question of this amendment. Moreover, in the brief submitted for the defendant, counsel said that "in the course of the trial plaintiff's counsel amended the complaint so as to make her sue as general administratrix, it appearing by the act of the legislature in question that the action could be brought only by the general administratrix." Again, plaintiff's counsel said, in the brief: "In the course of the trial she amended her complaint so as to sue as general administratrix." And, again, "such action should have been brought in the name of the personal representative of the deceased."

However, even though no consent to this amendment is to be spelled out of the case, nevertheless, under the doctrine

of *Giardini* v. *McAdoo,* 93 *N. J. L.* 138, the amendment is now and here allowable. In that case an administratrix sued under our Death act, when she should have sued as widow under the Pennsylvania Death act; and she was permitted to amend after trial and in aid of the verdict, which she received. This court holding (at *p.* 145) that the question was: "Are we precluded from permitting a proper amendment at this time, and must we reverse the judgment resulting from a trial upon the merits, because, on appeal, for the first time, the defendant raises the jurisdictional question?" And we said that the Supreme Court, in interpreting the section of the Practice act in *Hoboken* v. *Gear,* 27 *Id.* 265, held, that it extended to the introduction of matters which the parties hoped and intended to try in the case, and was not limited to matter within the issue upon the record. See, also, *Price* v. *N. J. R. & T. Co.,* 31 *Id.* 229.

From all that has been said it must be perfectly clear that the other amendment, namely, permitting the widow and next of kin to sue, should not have been made; and that will be disallowed.

An administrator has an action under the Executors and Administrators act (2 *Comp. Stat., p.* 2260, § 4), formerly section 1 of a supplement to an act to prevent in certain cases the abatement of suits and reversal of judgment (*Pamph. L.* 1855, *p.* 340) for damages to the estate of his deceased, and under the Death act to the executor of the estate of the deceased for the benefit of certain designated persons or next of kin. *Soden* v. *Trenton, &c., Trac. Corp.,* 101 *N. J. L.* 393, in which this court held (at *p.* 413) that the act of 1855, section 1, affords a full and complete remedy for tortious injuries to persons or property where death ensues, and (at *p.* 397) that the controlling features of the Death act of 1848 are that the damages are made recoverable as compensation for pecuniary injuries which designated beneficiaries have sustained by reason of death, and (at *p.* 399) that it seems that the act of 1855 is supplementary to the Death act; and in that case recovery for both injuries to the estate and injuries to the persons injured by the death of the deceased

were recoverable in one action by the general administrator of the decedent. And that is this case. But, two distinct causes of action, one for tortious injury to person or property of deceased in his lifetime, and one for injury for the persons pecuniarily damaged by the death of decedent, as in *Soden* v. *Trenton, &c., Trac. Corp. (Supreme Court)*, 100 *Id.* 27, and *S. C. (Court of Errors and Appeals)*, 101 *Id.* 393.

The amendments allowed to be made should have been returned with the *postea* in this case. And that should be done in every case, that the court of original jurisdiction, and an appellate court, may know how the verdict is to be supported if it be rested upon grounds of which it has no knowledge—on amendments that were ordered on the trial, but never returned with the *postea*. In *Stone* v. *Todd*, 49 *N. J. L.* 274, amendments were made at the Circuit, and while this does not appear in the report of the case, an inspection of the files discloses the fact that they were returned with the *postea*, namely, amendments to the declaration, new pleas and replications. The amendments directed to be made in this case will be ruled on at the conclusion of this opinion.

Several other questions remain to be disposed of on the merits of this appeal, one of which is, as to whether the act of 1922 contemplates the instant case and is constitutional.

The title of the act in question (1922) has already been set out. One of the objects expressed in it is for the recovery of damages in case of injury to means of support; and provision is made for the survival of such right of action in the event of the death of any person, to those who may have suffered from injury to their means of support by such death, and fixing the method of distribution where death results. This would seem to be broad enough to include the case of a widow and children (next of kin) of a person whose death was caused by the unlawful sale to the decedent of intoxicating liquor; but if anything were wanting in aid of this interpretation, it is supplied by the following from section 1 of the act: "If the death of any person results from intoxication, or from the sale or procuring of intoxicating liquor in violation of law, either directly or indirectly, such action shall be

brought by and in the name of the personal representatives of such decedent, and the amount recovered in every such action shall be for the exclusive benefit of the widow or of the surviving husband and next of kin of such decedent, and shall be distributed to such widow, surviving husband or next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate." This provision is like that contained in the second section of the Death act, *supra,* which provides that the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to distribution of personal property left by a person dying intestate.

It is argued for the defendant-appellant that the act of 1922 does not provide that the widow or next of kin, either individually or through any representative, may recover damages which arise by reason of the death of a person through the use of intoxicating liquors; in other words, that the act is not in any sense a death act, nor does a reading of the body of the act show that it is any broader in scope than its title. This is palpably not so. This suit is supported by the very language of the act.

It is also argued that the act is unconstitutional, in that the title does not express the object of the act. The meaning of the constitutional provision in that regard is, that the leading subject of a statute should be fairly expressed in its title. *State Board* v. *Phillipsburg,* 83 *N. J. Eq.* 402; *affirmed,* 85 *Id.* 161. And the Court of Errors and Appeals in *Sawter* v. *Schoenthal,* 83 *N. J. L.* 499 (at *p.* 503), observed: "We think that in the then known state of the statutory law, the title of the act of 1909 gave notice not only of the immediate object clearly expressed, but of the ultimate object clearly implied."

Again, the Supreme Court, in *Gottuso* v. *Baker,* 80 *N. J. L.* 520, held that under our constitutional provision the title of an act is in the nature of a label by which the object of the act is displayed; it is not a table of contents or an

index to everything that the statute contains. And in *Board of Education* v. *Tait,* 81 *N. J. Eq.* 161, this case was approvingly cited by the Court of Errors and Appeals (at *p.* 162).

In the title of the act under consideration an intention to give a right of action for damages caused by the death of a victim, to those who are injured thereby, is clearly expressed, and resort does not have to be had to the doctrine that it is clearly implied. And this act of 1922, creating a new cause for action, and giving a remedy therefor, being remedial in its nature, like the Death act, is to be liberally and beneficially expounded. See *Murphy* v. *Freeholders,* 57 *N. J. L.* 245.

The fact that the action in case of death shall be brought in the name of the personal representatives of the deceased, and the amount recovered shall be for the exclusive benefit of the widow, &c., is included in a *proviso* to section 1, does not in anywise support the argument of defendant's counsel. It makes no difference that the provision is contained in a *proviso.* Words found in a *proviso* may strengthen and support a construction of the act itself. *Eayre* v. *Earle,* 8 *N. J. L.* 359, 361. Sometimes a *proviso* introduced several states of constructive operation which would be better expressed by "and." 3 *Bouv. Dict. (Rawle's 3d rev.)* 2761. This *proviso* is not a *proviso* at all within the usual definition of the term, that its general purpose is to except the clause covered by it from the provisions of the statute. *Ibid.* This *proviso* contains a grant of power to the personal representatives of the decedent to bring suit, and provides for distribution of the recovery. It might better have been inserted as a conjunctive provision of the section after the word "and." It excepts nothing out of the statute, but enlarges upon the other powers conferred by it.

The argument on behalf of the defendant-appellant, that the statute of 1922 does not justify the prosecution under it of the case at bar, and that it is not constitutional, falls to the ground.

Not only does this act give a right of action to a person injured, and also to his executors or administrators for dam-

ages to his estate, but also to his personal representatives to recover the loss resulting to his widow and next of kin by reason of his death. And the court did not error in its charge to the jury in respect to this.

Another question arises upon the evidence admitted during the course of the trial as to the statements made by the deceased, testified to by his brother and the witness Demko. This evidence was improperly admitted, but was cured by the judge in his charge, striking out of the case all the evidence as to the statements made by the deceased before his death. See *Bullock* v. *State,* 65 *N. J. L.* 557, 560, 576; *State* v. *Dougherty,* 86 *Id.* 525; *State* v. *Rosenberg,* 97 *Id.* 430, 433.

The rule is that if inadmissible evidence has been received during a trial, the error of its admission is cured by its subsequent withdrawal before the trial closes, by an instruction to the jury, or even by an instruction to disregard it without more, such latter instruction being equivalent to striking out the improper evidence. 38 *Cyc.* 1441.

Nor does the evidence in this case so struck out come within the exception to the rule, which is, that where the evidence thus admitted is so impressive that in the opinion of the appellate court its effect is not removed from the minds of the jury by its subsequent withdrawal, or by instruction by the court to disregard it, judgment will be reversed on account of its admission. 38 *Cyc.* 1443. But, obviously, the hearsay evidence in this case could have had no such effect. There was testimony tending to show that the decedent died as the result of drinking whiskey, and that some of it, at least, was procured at the defendant's club. It seems, therefore, quite immaterial and harmless that he suffered pain which he described, and which the witnesses said they heard him declare. It certainly was not of such a character that its effect could not have been removed from the minds of the jury by its withdrawal. The case of *Thompson* v. *Pennsylvania Railroad Co.,* 51 *N. J. L.* 42, cited by counsel for defendant-appellant, to show that this testimony was within the exception to the rule, does not apply. The court was there dealing with testimony as to witness' opinion and esti-

mate of the depreciation of the property, which ran entirely through the case, and in that case the misleading testimony was not struck out at all. It is our opinion that if there were any prejudice in this testimony, which inhered in the case even after it was stricken out, the judgment should not be reversed because it could not have injuriously affected the substantial rights of the defendant. Practice act (1912), *Pamph. L., p.* 383, § 27. And where the jury is instructed to find no damages on the subject of testimony unlawfully admitted, but not stricken out, this court has held that no harmful error resides in the cause. *Bernadsky* v. *Erie Railroad Co.,* 76 *N. J. L.* 580, 581.

There was no error in the court's charge that if the plaintiff was entitled to recover, the measure of damages was what the deceased would have recovered if he had suffered pain or sickness by drinking intoxicating liquor, and that there could also be recovery of damages by the widow and next of kin by reason of the death of plaintiff's intestate.

Nor was there any error in refusing to nonsuit, or to direct a verdict for defendant, because there was evidence when the plaintiff rested, which still persisted when the whole case was submitted, from which it could reasonably and properly be inferred that the deceased met his death as the result of alcoholic liquor obtained from the defendant, or that such liquor contributed to his death. It is idle for the defendant-appellant to contend that there is no evidence upon which to rest a verdict in this case, after having obtained a rule to show cause upon the ground that the verdict was contrary to the weight of evidence, and the Supreme Court, on that rule (*Boniewsky* v. *Polish Home of Lodi,* 102 *N. J. L.* 241), held that the verdict was not against the weight of the evidence, thus deciding not only that there was evidence to sustain the verdict, but that the verdict was not against its weight.

In *Catterall, Admrx.,* v. *Otis Elevator Co., post, p.* 381, it was held that the general rule is that where a rule to show cause why a verdict should not be set aside is allowed, with exceptions reserved, and the party obtaining the rule

specifies, as his reasons for asking that it be made absolute, the matters upon which the reserved exceptions are based, and, upon the return of the rule argues those matters, and the court afterwards considers and determines them, the exceptions are to be considered as having been abandoned with the approval of the court, and the right to have them reviewed by an appellate tribunal is lost.

Nor is there anything in the argument that there is no presumption that whiskey is a poison or that it will cause death, or even contribute to a person's death. Dr. Ogden, county physician of Bergen, testified that he performed an autopsy on the deceased, and that he had died from acute pancreatitis, the contributing cause of which was alcoholism. If the man died from the effects of alcoholism, and as there was evidence tending to show that he got whiskey at the club, then, surely, the whiskey that he there procured at least "contributed" in some degree to his death, which brought the case within the provisions of the act of 1922.

The result reached in this case is that there should be an affirmance of the judgment. But this will require a molding of the verdict by the trial court and an amendment of the judgment in the Supreme Court to correspond. The Practice act (1912), section 27, provides, among other things, that no judgment shall be reversed on the ground of procedure, unless, after examination of the whole case, it shall appear that the error injuriously affected the substantial rights of the party. This doctrine has been applied in very many cases.

Now, as shown above, a verdict was properly found for the plaintiff-respondent upon the issues which the parties hoped and intended to try, namely, the guilt or innocence of the defendant in respect to being contributory to the death of Frank Boniewsky, and the beneficial effect of the section above stated extends to a verdict, as well as to any other matter in the cause.

In *State* v. *Schwarzback,* 84 *N. J. L.* 268, this court held that the trial court would have the right to mold a verdict to express the conviction with technical accuracy; but, being otherwise legal, it was not to be reversed, although it might

not be corrected here. There we did not send the case back for correction of the verdict, which seemed to be unnecessary.

In *State* v. *Jankowski*, 82 *N. J. L.* 229, the Supreme Court (at *p.* 231) said that the court in a civil case may mold the verdict, not saying what court; that the omission there was purely technical, &c., and that the Essex Sessions might well have returned the verdict according to its legal effect; and, also, that the Supreme Court might deal with it as if the verdict was set forth with technical precision. Meaning, doubtless, that the Supreme Court, on error, could deal with the verdict as it should have been, not that it would have molded the verdict itself.

In the late case of *State* v. *Merra, post, p.* 361, we recently called upon the judge of the Oyer and Terminer of Essex to certify as to whether or not the verdict rendered by the jury was accurately stated in the state of the case and the printed record submitted to us, and, if not, then what, in fact, that verdict was. And the judge sent us a certificate, accordingly, showing that an inaccurate verdict had been returned and printed, and certifying what the verdict really was.

The cases above cited are criminal ones, but the same rule of course exists in civil causes. It has there been held that it is erroneous to apply to the court *in banc* to rectify or alter the terms of a *postea* or the entry of a verdict or the finding of a jury, but the application must be made to the judge who tried the cause to correct the verdict according to his notes. *Chit. Gen. Prac.* \*41, \*922. See, also, *Iles* v. *Turner,* 3 *Dowl.* 211.

In *Humphreys* v. *Woodstown,* 48 *N. J. L.* 588, this court held that the court below, which had tried the case and molded the verdict, had the right to put it in proper form, if it be not changed in substance, as it was not; and (at *p.* 596) said that it has been decided repeatedly in this and other states that if the point at issue can be concluded from the finding of the jury, the court will mold it into form and give it due and legal effect, citing *Stewart* v. *Fitch,* 31 *N. J. L.*

17; *Price* v. *N. J. R. R. & T. Co., Ibid.* 229; *Phillips* v. *Kent,* 23 *Id.* 155.

*Stewart* v. *Fitch, supra,* was tried at the Burlington Circuit and a verdict rendered for the plaintiff. A rule to show cause was argued before the Supreme Court, and it was held (at *p.* 19) that the general verdict in favor of the plaintiff necessarily implied that the issues on the special pleas were against the defendants, and the court, not saying what court, has power to record it in proper and technical language; and for that reason it was therefore not sufficient to sustain the motion to set the verdict on the *postea* aside.

*Price* v. *N. J. R. R. & T. Co., supra,* was not a case involving any amendment of the verdict, but one to adapt the form of remedy to the case made on the trial, and the court amended an action in trespass to be one in case after trial and verdict.

In *Phillips* v. *Kent, supra,* the Supreme Court (at *p.* 158) cited 3 *Chit. Gen. Prac.* *41, and said that the rule (of the trial court amending the *postea*) is founded in reason and ought not to be lightly departed from, but must be limited to a substantial alteration of the *postea,* and cannot be applied to the mere molding of a verdict into technical and legal form, and the Supreme Court amended the *postea* there.

In *Connolly* v. *Public Service Railway Co.,* 94 *N. J. L.* 157, this court (at *p.* 160) required the trial judge to certify what he said to the jury by way of a certain instruction, which he did.

From the above, it may be deduced that the rule is, that an appellate court, to sustain a judgment, may regard a verdict expressed in untechnical language as truly finding the fact or facts in issue, or may mold a verdict itself, and affirm accordingly; but, where a verdict is to be changed to meet the facts which were introduced by amendment before the trial court, in order to support a judgment which will differ from one which might be entered on the issue sent down in the Circuit record, and which judgment must now be entered upon an amended verdict to be returned with an amended *postea,* the appellate court has power to require the

judge who tried the case to mold the verdict and return it with such amended *postea,* so that such proper judgment may be entered.

As in the case of *Giardini* v. *McAdoo, supra,* we directed that the cause be remitted to the Circuit, with leave for the plaintiff to apply for, and with direction to the court to grant, appropriate amendments to the proceedings, so as to bring the cause within the provisions of the Death act of Pennsylvania, which was given effect here by comity, and granted a new trial on the question of damages only, the award being excessive for reasons stated; so, in this case, we direct that the judgment be affirmed, with direction to the attorney for the plaintiff to move in the trial court, and that court to grant (1) an amendment in writing substituting the plaintiff in her capacity as general administratrix of the decedent, with two counts in the complaint—(a) one alleging damages to the estate of the decedent in his lifetime, and (b) one alleging damages to the widow and next of kin by reason of his death, and striking out her capacity as administratrix *ad prosequendum;* (2) striking out the second amendment, substituting the widow and children of decedent to sue as parties plaintiff in the suit; (3) molding the verdict to be one in favor of the plaintiff as general administratrix (a) for $100 for the benefit of the estate of decedent, and (b) finding for the plaintiff as general administratrix in the sum of $12,000 for the benefit of the widow and next of kin of the decedent under the act of 1922; (4) to return the amendment and molded verdict with a properly amended *postea;* (5) to then move in the Supreme Court for a judgment based upon the molded verdict, and in strict accordance therewith.

For all of which the plaintiff-respondent may have costs, and, ultimately, an execution according to the course and practice of the Supreme Court.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, JJ. 13.

*For reversal*—None.