EDMOND E. ROBINS AND MICHAEL BROGAN, CO-PART-
NERS, TRADING AS ROBINS & BROGAN, AND FRANK
McGUIGAN, PLAINTIFFS-RESPONDENTS, v. MACK IN-
TERNATIONAL MOTOR TRUCK CORPORATION, DE-
FENDANT-APPELLANT.

Argued May 21, 1934—Decided September 27, 1934.

For the respondents, *C. Richard Allen* (*Henry F. Stock-
well,* on the brief).

For the appellant, *Starr, Summerill & Lloyd* (*Richard M. Glassner* and *Merrill Lane,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The judgment which is before us for review represents the result of a third suit between the same parties for the same alleged cause of action. The first was tried before Mr. Justice Donges, when he was Circuit Court judge, and resulted in a judgment of nonsuit. The second trial was also before the same jurist and again resulted in a judgment of nonsuit. On appeal the second judgment was unanimously affirmed by this court. 107 *N. J. L.* 285.

The present, and third, suit was tried before the late Circuit Court judge, William Eldredge, and resulted in the following verdicts against the appellant: (a) for Robins and Brogan, $2,944.02; (b) for Frank McGuigan, $6,846.66, and (c) for Robins & Brogan and McGuigan, $28,080. Judgments based on these verdicts were entered under one judgment.

A rule to show cause, with exceptions taken at the trial expressly reserved, was granted by the learned trial judge to the appellant. The reasons assigned were that the verdicts were the result of prejudice, passion and bias on the part of the jury and that each verdict was excessive. The memorandum filed by the trial judge, on the disposition of the rule, discloses that it was argued that since verdict (c) of $28,080, awarded for loss of profits to all respondents, was so excessive, it shows that it was the result of passion, prejudice and mistake on the part of the jurors, that it follows that all the verdicts were the result of like infirmities, and therefore, they should all be set aside.

The court below being of the opinion that verdict (c) alone was excessive but not to the extent that it should vitiate the other verdicts, vacated and dismissed the rule to show cause on verdicts (a) and (b) and ordered that the judgments based on the two verdicts be made absolute and granted a new trial as to the judgment based on verdict (c) as to damages only.

The propriety of these judgments as well as the disposition of the rule to show cause, are before us for review.

The instant suit relates to the same controversy which was the subject-matter of the two prior suits between the same parties. It arises out of a claim made by respondents against appellant for damages for loss sustained by reason of the alleged refusal on the part of the appellant to permit respondents to redeem certain trucks, seven in number, which had been repossessed by appellant because of the non-payment of the installments due under the conditional sales contracts between the parties, for said trucks.

The basic question presented for decision on this appeal, therefore, is the same question that was present on the last appeal (107 N. J. L. 285), i. e., whether the tender made by the respondents in their efforts to redeem the trucks (under section 18, *Pamph. L.* 1919, *p.* 461) was unconditional and thus valid, or conditional, and thus invalid?

A brief resume of the facts is necessary in order to more fully understand the situation herein presented. They are as follows:

Robins and Brogan were partners engaged in the general hauling business, and McGuigan had become associated with them as a partner in the profits of that business. The first named partners had a conditional sales agreement with appellant for two trucks, which agreement was dated August 14th, 1926 (*Exhibit P-1*), and designated as the New Jersey contract; McGuigan had a like agreement with appellant for five trucks, which was dated May 27th, 1927 (*Exhibit P-2*), and was designated as the Pennsylvania contract. Each contained, among its several provisions, the following: "Upon default in the payment of the principal or interest of any said notes (given in pursuance to the agreement) then the vendor may at its option declare all of the said notes immediately due and payable and the same shall thereupon become due and payable;" and, "the purchaser shall at his own expense keep the property free of all liens, * * *."

Prior to July, 1927, there was a default under both agreements. $1,400 was due under *Exhibit P-1*, and $800 was due

under *Exhibit P-2*. On July 16th, 1927, a levy was made by the sheriff of Philadelphia county, Pennsylvania, on the seven cars under a judgment recovered by one Howard E. Ziegler against Robins and Brogan only. Appellant immediately posted a bond of $5,700 to redeem the trucks and on July 21st, 1927, they were redeemed. Notwithstanding this redemption the trucks continued in possession of respondents. And on July 25th, 1927, appellant gave respondents the statutory notice (*Pamph. L.* 1919, *ch.* 210, *p.* 461, § 18), of ten days within which to redeem the trucks upon the payment of "* * * all past due installments with interest, together with expense of retaking, keeping and storage), * * *, otherwise the same would be sold in accordance with the provisions of the act of our state. On the same day a like notice was also given to McGuigan: "* * * that if at the expiration of ten days from July 21st you do not tender the amount of all unpaid installments, with interest * * *" it would proceed to sell in accordance with the act of Pennsylvania.

It is conceded that the portions of the Uniform Conditional Sales act herein involved are the same in New Jersey and Pennsylvania. We desire to mark the fact that appellant itself stated in its answer that Ziegler, who had recovered the judgment above stated, did, on July 25th, 1927, abandon all claims to the two trucks under *Exhibit P-1*, and that the same remained in possession of appellant from the time of repossession until they were sold in accordance with the statute. Respondents proceeded to redeem the trucks. McGuigan called on Mr. Woehling, appellant's manager of its Philadelphia branch. On July 27th, 1927, McGuigan came and told Woehling that, pursuant to arrangements, he was prepared to pay the amount of the defaulted notes. Woehling would not accept payment for the stated reason that he was instructed by appellant not to accept anything unless it was the full payment due on the trucks and that such payment was to be made to its attorneys. He said, "it is entirely out of my hands." McGuigan got in touch with Messrs. Mount and Henderson, of the law firm of Rawle & Henderson, appellant's attorneys.

On July 30th, 1927, respondents, together with their financial backers, Messrs. Bechtold and McManus, prepared to pay the moneys necessary to redeem the trucks, conferred with Messrs. Mount and Henderson. The solution to the basic question herein involved depends largely on what was said and done at this pivotal conference. It should here be observed that this court, in 107 *N. J. L.* 285, held that the tender made by respondents was invalid, "for the reason that the tender was accompanied by a condition which plaintiffs were not entitled to impose, viz., that defendant should 'make out the title to Bechtold and McManus.' "

Returning to this conference of July 30th, 1927, which incidently was on a Saturday, and the last day on which respondents could redeem, it appears that three propositions were discussed. They are pointed out in the court's charge and are as follows: (1) The first proposition offered by Robins was that Henderson and Mount should accept $12,020 and convey title to the trucks to McManus and Bechtold. The court held, and properly so, that it was not a good tender. It carried an obligation not imposed on appellant under the contract. (2) The second proposition provided that $12,020 should be paid to the Mack Truck Company, through its attorneys, and that title should be conveyed to Robins, Brogan and McGuigan and there should be entered on the sales, on the contracts liens of the judgment in favor of McManus and Bechtold. The court below held, and again correctly so, that this was a conditional tender.

Bearing in mind that appellant, for the first time at the last stated conference, insisted on some sort of indemnification against loss by reason of its having posted the bond with the sheriff of Philadelphia county before it would allow respondents to redeem the trucks; and that the expressed willingness of Woehling to accept the amount of the defaulted notes was withdrawn, although McGuigan came prepared to pay them; and that the tender was not unlike all prior tenders made; we approach what is described as the third proposition discussed at this conference. (Incidently respondents

indicate that there was proof concerning this proposition at the former trials.) At all events, it arises out of the following testimony of Robins: "Q. What was the third proposition? A. The other proposition was to transfer the title to Robins and Brogan and McGuigan, and put the encumbrances on the back of each and every title for each and every truck in the amount it was worth in favor of McManus and Bechtold, and for the Mack company to accept the check, and continue to hold the trucks until we could take care of them, or leave the trucks go back into the hands of the sheriff, as we would redeem them from the sheriff as soon as we could. Q. And they refused that? A. They refused that. Q. They refused all three of these propositions? A. They refused everything we offered them." Robins' testimony was corroborated. The court described the proposition as follows: "Robins testified that there was shown an offer by himself, or an offer by McManus in his behalf, Robins acting as spokesman for McManus, that title should be transferred to Robins, Brogan and McGuigan and that the trucks should be held by the Mack company until the matter of the bond was straightened out."

For appellant, Messrs. Mount and Henderson testified and they denied that there was any such proposition made. They insisted that the only offer made was that the moneys should be paid on behalf of the respondents by McManus and Bechtold, and that title to the trucks should be taken in their names. Both Mount and Henderson, did, however, testify that had a tender such as was testified by Robins been made it would have been satisfactory to them and they would have accepted it. They saw no legal objection thereto.

The court below was of the opinion that if respondents' version of the facts, as embraced in the third proposition, were true that it would constitute a valid tender. Under the marked divergence of the testimony, on this question, the court submitted the case to the jury . The latter found for respondents.

Appellant set down seventy-one grounds of appeal. They

are argued under three issues or points. They are as follows: (1) Assuming the testimony of the plaintiff Robins as to the tender to be true, was the tender sufficient? (2) Did the trial court abuse its discretion in not setting aside all the verdicts *in toto?* (3) Did the court err in charging plaintiffs' requests Nos. 12, 13 and 16 or one of them? The requests are as follows:

"12. The demand by defendant corporation and its attorneys for 'some kind of indemnity' must have been sufficiently definite to have enabled the plaintiffs to know what was expected of them. Otherwise it was ineffective and incapable of compliance."

"13. The demand for indemnity must, in the opinion of the jury, have been a reasonable one in view of all circumstances and, in considering its reasonableness, the jury might consider the time, place and hour where the demand was first made, *the likelihood of defendant's liability on the bond* and the opportunity given to the plaintiff to comply with such demand."

"16. In view of the notices and demands both written and oral, made by the defendant of the plaintiffs, to pay money, it is for the jury to determine whether the demand for indemnity first made at or near noon on Saturday, July 30th, was a reasonable one for the defendant to make in this circumstance."

Counsel for appellant argues strongly under the court's refusal to nonsuit and direct a verdict, that these motions were not based on the ground that there was no evidence to support the verdicts for the plaintiffs on the theory upon which the case was permitted to go to the jury; but, in substance, upon the theory that the court gave an erroneous effect to the testimony of the plaintiffs as to the tender and that, therefore, no matter how much testimony was offered in support of that erroneous theory, it was inefficacious.

What is an effectual tender? "The word 'tender' as used in the books in treating of the necessity of a tender or offer by the parties, as applicable to the case of mutual and concur-

rent promises, does not mean the same kind of offer as when it is used in reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it, and nothing further remains to be done, and the transaction is completed and ended; but it means only a readiness and willingness accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness." 26 *R. C. L.* 623.

A tender to be effectual therefore must be unconditional (107 *N. J. L.* 285); it must be without conditions to which the creditor can have a valid objection, or which will prejudice his rights. 26 *R. C. L.* 623, § 21, *p.* 640. See, also, discussion of the subject in 62 *C. J.* 654.

Under section 18 (Redemption) of the Uniform Conditional Sales act (*Pamph. L.* 1919, *p.* 461, and the supplements), respondents were entitled to redeem; (a) "Upon payment or tender of the amount due under the contract at the time of retaking;" or (b) "Upon performance or tender of performance of such other condition as may be named in the contract as precedent to the passage of the property in the goods;" or (c) "Upon performance or tender of performance of any other promise for the breach of which the goods were retaken."

Assuming, but not so deciding, that appellant had a right to withdraw the original proposition made by its Mr. Woehling, at the time McGuigan came prepared to meet it, and, assuming further, under the same premise, that appellant had a right to impose conditions at the eleventh hour, concerning the bond, although it retook the trucks solely for the reason of the default in payment of the installments (notes) due at the time of the retaking, it is obvious that any demand which appellant made had of necessity to be reasonable and legal. Surely it had to be certain and definite in character. The proofs disclose that its demand was "for

some sort of indemnity;" "some sort of satisfactory security;" or "we must have either the trucks or some kind of security to indemnify us." This certainly was not certain or definite. It was obviously vague, uncertain and indefinite. The appellant's demand for indemnification, altogether, concerning this bond is difficult to understand. Particularly is this so when its own attorneys conceded that under the laws of Pennsylvania, the abandonment of the claim of the judgment creditor, rendered the bond filed in that suit void of any liability thereon. It is said that it was later so held by the Pennsylvania courts.

Thus, applying the principles of law stated to the proofs in the instant case, it clearly appears to us that respondents did more than they were obliged to do, namely, to satisfy the claim under which the trucks were retaken. No precise form of indemnity being required, respondents offered to permit appellant to continue to hold the trucks or to have them go back to the sheriff, and to be held by the latter until such time as the matter of the bond was adjusted. It would seem to us that respondent did all, and offered to do more, than they were obliged to do. They did all they could possibly have done in the premises in order to repossess themselves of their trucks. There was nothing in the terms of their tender to which appellant could have made valid objection or if accepted by it could have in anywise prejudiced its rights. But it was all of no avail. Appellant remained adamant; the tender was refused. The trial judge submitted the case to the jury and the proofs fully justified the latter's findings.

But our affirmance is also rested on the ground that appellant obtained, as already stated, a rule to show cause assigning, among other reasons, that the "verdict was the result of prejudice, passion and bias on the part of the jury." It is the well settled law that such an assignment is the equivalent to an assignment that the verdict is against the weight of the evidence. The discharge of the rule to show cause, under such circumstances precludes further consideration of any

question which was assigned as a ground for setting the verdict aside on the rule, such question being *res adjudicata,* whether argued or not, and although not decided in terms on the rule to show cause.. It precludes an appeal on the grounds of error in refusing to nonsuit and to direct a verdict for the lack of evidence. *Steinert* v. *Pennsylvania Railroad Co.,* 107 *N. J. L.* 505; 153 *Atl. Rep.* 533; *Goekel* v. *Erie Railroad Co.,* 100 *N. J. L.* 279; 126 *Atl. Rep.* 446; *Margolies* v. *Goldberg,* 101 *N. J. L.* 75; 127 *Atl. Rep.* 271; *Catterall* v. *Otis Elevator Co.,* 103 *N. J. L.* 381; 135 *Atl. Rep.* 865; *Boniewsky* v. *Polish Home of Lodi,* 103 *N. J. L.* 323; 136 *Atl. Rep.* 741; *Noonan* v. *Great Atlantic and Pacific Tea Co.,* 104 *N. J. L.* 136; 139 *Atl. Rep.* 9; *Cleaves* v. *Yeskel,* 104 *N. J. L.* 497; 141 *Atl. Rep.* 814; *Overend* v. *Kiernan,* 105 *N. J. L.* 112; 143 *Atl. Rep.* 357; *Freschi* v. *Mason,* 108 *N. J. L.* 272; 156 *Atl. Rep.* 758; *Molnar* v. *Hildebrecht Ice Cream Co.,* 110 *N. J. L.* 246; 164 *Atl. Rep.* 300.

Counsel may not take the position on the argument of a rule to show cause that the law of the case as adopted by the trial court is correct and on appeal argue that the law as adopted by the same court below was erroneous. It is not an alternate position; it is an inconsistent one. It is untenable. *Cleaves* v. *Yeskel, supra; Molnar* v. *Hildebrecht Ice Cream Co., supra.*

Now as to the objection to the stated charges. If we analyze them, first, on the theory that no tender of indemnity as to the bond was necessary, for the reason that the trucks were not retaken by reason of the lien of the judgment and the filing of the bond by the appellant, they were mere surplusage, and therefore harmless. At all events, the charges that the demand for the bond for indemnity had to be sufficiently definite, clear and reasonable in time, place and hour, considering that the demand was made almost at the last business hour of the last day for redemption, was certainly not erroneous.

Thus whether we consider these charges on the first theory suggested, or secondly, on the theory upon which the case

was submitted to the jury (*Barnes* v. *E. M. Wallington & Co.*, 78 *N. J. L.* 490; *Flammer* v. *Morelli*, 100 *Id.* 314), particularly that portion of the thirteenth charge wherein the court charged that the jury might consider "* * * *the likelihood of defendant's [appellant] liability on the bond* * * *"* they are also free from error. The liability, if any, on the part of the appellant, under the bond, depended entirely upon the law of the State of Pennsylvania where it was filed. Testimony of opinion witnesses as to that fact was introduced by both parties. It is the well settled law of this state that what the law of the State of Pennsylvania was at the time, relating to the likelihood of appellant's liability thereon, was a question of fact and like all other questions of fact was for the jury to determine. *Fithian* v. *Pennsylvania Railroad Co.*, 91 *N. J. L.* 275, 279; *Giardini* v. *McAdoo*, 93 *Id.* 138, 141.

Assuming, however, that this charge was erroneous, nevertheless, in the light of the proofs, particularly, the admission by the appellant that the judgment creditor had abandoned the claim; and the testimony that, as a result of that abandonment, there was no liability on the bond in the premises, the charge was harmless; it did not injuriously affect any substantial rights of the appellant.

Our study of the record leads us to the conclusion that the charge of abuse of discretion in not setting aside all of the verdicts is without merit.

Judgment is affirmed, with costs.

*For affirmance*—The CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.