PHILIP NOTO, ADMINISTRATOR AD PROSEQUENDUM OF
THE ESTATE OF ROSA NOTO, DECEASED, AND ADMIN-
ISTRATOR AD PROSEQUENDUM OF THE ESTATE OF
LENA NOTO, DECEASED, PLAINTIFF, v. JOSEPH GAMBI
AND LAWRENCE TOOHERS, DEFENDANTS.

Decided January 16, 1940.

For the plaintiff, *Guadielle & Shuart.*

For the defendants, *Mr. John W. McGeehan, Jr.*

BROWN, S. C. C.   It is alleged in the complaint in the
above entitled cause that Philip Noto is a resident of the
borough of Brooklyn; that Rosa Noto and Lena Noto on
June 21st, 1936, while passengers in an automobile owned
and operated by the defendant Gambi sustained injuries which
resulted in their death.   The charge of negligence is made
against Gambi as well as the defendant Toohers, who was
driving an automobile on the same highway in the county of
Union in this state when it collided with the Gambi automo-
bile.   The defendant Gambi moves to strike out the complaint
on the grounds that at the time of the institution of the suit
Philip Noto was not lawfully appointed administrator *ad
prosequendum* of the decedent's estates; that there is no
administrator *ad prosequendum* qualified in law to maintain
the above entitled action; that the action was not lawfully
and properly commenced within two years after the death
of Rosa and Lena Noto.   Depositions taken disclose that
Gambi was a resident of the State of New Jersey at the time

of the occurrence; that Philip Noto was appointed administrator *ad prosequendum* of the estates of Rosa Noto and Lena Noto on the 26th day of July, 1938, by the surrogate of Union county in the State of New Jersey. The exhibits offered in evidence include a certified copy of the petition and letters administrator *ad prosequendum* granted to Philip Noto. The petition recites the residence of Lena Noto and Rosa Noto at the time of their death as being in the city of New York. According to the depositions furnished it also appears that on July 6th, 1936, letters of general administration were granted to Philip Noto by the surrogate of New York county of the estates of Lena and Rosa Noto and that Philip Noto was a resident of New York at that time. These letters of administration were known as "limited" letters and under section 122 of the Surrogate's act of the State of New York the general administrator is authorized to bring an action for the wrongful death of the decedents. On June 20th, 1938, the summons and complaint in this cause were issued as above entitled. Counsel for the plaintiffs appeared before the surrogate of Hudson county for the purpose of obtaining letters of administration *ad prosequendum* on the last day before the statute of limitations under the Death act expired. The surrogate of Hudson county refused to grant letters of administration *ad prosequendum* to the counsel of the general administrator until the general administrator had furnished to the surrogate of Hudson county exemplified copies of his appointment by the surrogate of New York county with power to sue as provided by the law of the State of New York but that the application for letters would be retained in the meantime by the surrogate of Hudson county. The exemplified copy of letters of New York county were not furnished until a few days after the statute of limitations had expired, but the summons and complaint as above entitled were left with the sheriff of Hudson county on June 20th, 1938, counsel believing that no objection would be made to the issuance of letters of administration by the surrogate of Hudson county. On the return date of the application for letters of administration, that is to say on June 30th, 1938, Gambi's counsel appeared before the surrogate of Hudson

county and objected to the granting of letters on the ground that said application should be made to the surrogate of the county of Union where the death occurred. The application in Hudson county for letters of administration was withdrawn and application was made to the surrogate of Union county for letters *ad prosequendum* and the same were granted on the 26th day of July, 1938. It also appears in the depositions taken in this cause that a reason for the delay in bringing the suit was because of negotiations pending between the parties for a settlement of the claims made for damages on account of the death of Rosa and Lena Noto. The Death act provides in part (*R. S.* 2:47-3) : "Every action, proceeding or claim brought, instituted or made under and by virtue of the remedy given by this act to which this is a supplement shall be brought, instituted or made in the name of an administrator *ad prosequendum* of the decedent whose death gives rise to the claim under the act to which this is a supplement * * * that every action shall be commenced or sued within two years after the death of such deceased person and not after * * *." In the instant case the summons is tested and suit was brought on the 18th day of June, 1938, in the name of Philip Noto, administrator *ad prosequendum* of the estates of Rosa Noto and Lena Noto. As far as the entitlement in the cause of action as well as the time within which suit was brought are stated in the complaint and summons they comply with the Death act. According to the test date of the summons the suit was brought three days before the expiration of the two years statutory limit from the date of death which was on June 21st, 1936. Our appellate courts for many years past and especially in the case of *Wilson* v. *Dairymen's, &c., Inc.,* 105 *N. J. L.* 188; 143 *Atl. Rep.* 454, have held that in deciding motions of this kind on technicalities frequently results in a miscarriage of justice; that the aim of the decisions of the courts and the acts of the legislatures is to abolish technicalities and enable suitors to have the merits of their controversies fully tried. The Practice act (*N. J. S. A.* 2:27-157) provides that in order to prevent the failure of justice by reason of mistakes and objections of form the court or judge at all times may amend any defects

and errors in any proceeding in civil actions where there is anything in writing to amend. The Practice act (*N. J. S. A.* 2:27-158) also provides that no civil action or proceeding shall fail or be dismissed on the ground that the plaintiff or any member therein has made a mistake in the remedy or procedure. In the case of *Public Service* v. *Post*, 257 *Fed. Rep.* 933, it was held that the act providing for the bringing of an action by administrator *ad prosequendum* in nowise affected the liability of the defendant; it did not change the persons for whose benefit recovery might be had or their respective interests and such recovery remained the same. In the case of *Giardini* v. *McAdoo*, 93 *N. J. L.* 138; 107 *Atl. Rep.* 437, the plaintiff instituted a suit in a representative capacity, when, under the Pennsylvania law it should have been instituted as "widow" of the deceased; the objection was raised for the first time upon the appeal of the cause to the Court of Errors and Appeals and notwithstanding the expiration of the statute of limitations an amendment was permitted to substitute the proper party plaintiff. In the *Wilson* v. *Dairymen's League, &c., Inc., supra,* the error in the designation of the plaintiff was not discovered until after twenty-four calendar months from the date of the death. Letters of administration *ad prosequendum* were not granted until more than two years after the death in that case and at the trial of the case an amendment was permitted to designate the plaintiff as administrator *ad prosequendum* although no exception was taken to the ruling of the court granting a nonsuit by the trial judge on ground that the right of action had been barred by the statute of limitations, the Court of Errors and Appeals overruled the nonsuit. Other cases of amendment are *Boniewsky* v. *Polish Home of Lodi,* 103 *N. J. L.* 323; 136 *Atl. Rep.* 741; *Grijnuk* v. *McAdoo,* 95 *N. J. L.* 256; 113 *Atl. Rep.* 920; *Giardini* v. *McAdoo, supra,* and *Michelson* v. *Erie Railroad,* 106 *N. J. L.* 147; 147 *Atl. Rep.* 535. The motion to strike is denied.