WILLIAM HAMMOND, BY HIS NEXT FRIEND, HARRY HAMMOND, AND HARRY HAMMOND, PLAINTIFFS-RESPONDENTS, v. COUNTY OF MONMOUTH, DEFEND-ANT-APPELLANT.

Submitted May 15, 1936—Decided July 24, 1936.

Before Brogan, Chief Justice, and Justices Case and Perskie.

For the appellant, *Applegate, Stevens, Foster & Reussille.*

For the respondents, *Quinn, Parsons & Doremus.*

The opinion of the court was delivered by

Perskie, J. This appeal involves the tort liability of a municipal corporation. The law on this subject is clear. The principles of law which govern have been stated and restated many times. Thus it is now well settled that "a municipality is not liable to an individual for its failure to exercise an imperative governmental function, or for negligence of its officers or agents in the performance of a public duty, imposed upon it by law." *Allas* v. *Borough of Rumson,* 115 *N. J. L.* 593, 594; 181 *Atl. Rep.* 175. It is now also equally well settled that "this exemption from liability does not extend to private injury resulting from active wrongdoing chargeable to the municipal corporation." *Allas* v. *Borough of Rumson, supra.* The application of these principles to various factual situations frequently gives rise to hardships and difficulties. In reason and logic, it is difficult to understand why there should be any distinction between passive and active wrongdoing. For, in either event resultant consequences to the injured party are, of course, the same. Thus many legal authors contend with force and conviction that there appears to be no justifiable reason why a municipality should be any the less or more culpable for the negligent doing of an act than for the negligent failure to do the act. Nevertheless, this distinction does exist. And until the legislature decrees otherwise, it must and shall be respected and followed.

To determine, therefore, the applicability of these principles to the case at bar we recur to the facts.

In the early hours of the morning of September 8th, 1934, while driving a truck in the course of his employment as a milkman, plaintiff met with an accident giving rise to the injuries for which he now seeks to recover. It appears that the defendant, county of Monmouth, had made an excavation in the center of the highway in order to repair bricks in a culvert. The plaintiff saw the hole, but too late to avoid the accident. The rear wheels of the truck he was driving dropped into the excavation and the truck overturned. At the time of the accident there seem to have been no lights to warn oncoming motorists, and there were no guards or barriers surrounding the work. During the course of the trial defendant's motion for a nonsuit and a directed verdict were denied. The jury returned a verdict for the plaintiff in the sum of $2,500 and $100.91 costs, and rule to show cause why a new trial should not be granted on the grounds of excessive damages and the verdict being contrary to the weight of the evidence was argued and discharged. Defendant then instituted this appeal.

*First:* Defendant contends that the trial court fell into reversible error in refusing to grant a nonsuit or direct a verdict in its favor. Since this contention is founded on the premise that at the time the injuries were sustained by the plaintiff the defendant was engaged in a governmental duty imposed on it by the legislature, we approach a consideration of the basic question involved. Was there active wrongdoing chargeable to the county in the case at bar? We think so. Concededly, in repairing this culvert, the county was doing an obligatory act under legislative mandate. *Pamph. L.* 1918, *p.* 607. In *State* v. *Erie Railroad Co.,* 84 *N. J. L.* 661, 663; 87 *Atl. Rep.* 141, this court held:

"Briefly stated, the doctrine of our cases is that where the doing of a thing that would otherwise be a public nuisance is authorized by the legislature, the doing of that thing by the person authorized, in the manner and for the purpose authorized, cannot constitute a public nuisance in the absence of negligence, and such negligence must consist of something more than the mere doing of the authorized act."

We think that in the instant case there was "something more than the mere doing of an authorized act." Under the proofs it was open to the jury to find, on the disputed facts, if it so chose, that there were neither proper or sufficient lights nor barriers around the excavation. Thus, notwithstanding that the legislature authorized the repair to this culvert, and that the only way the culvert could be repaired was by an excavation in the highway, nevertheless the failure of the county to provide adequate protection constituted active wrongdoing on its part. Such failure to protect motorists transcends the bounds of mere passive negligence. The wrongdoing herein alleged is positive misfeasance within the holdings of our cases. In the case of *Florio* v. *Jersey City,* 101 *N. J. L.* 535, 537; 129 *Atl. Rep.* 470; 40 *A. L. R.* 1353, this court held: "The active wrongdoing must be chargeable to the municipality in order to render it liable, *e. g.,* where a municipality directs its employes to dig a hole in a public highway and leaves it unguarded, or participates in some other act of misfeasance of its employes through which a person suffers injury." See, also, *Jersey City* v. *Kiernan,* 50 *N. J. L.* 246; 13 *Atl. Rep.* 170; *Hart* v. *Freeholders of Union,* 57 *N. J. L.* 90; 29 *Atl. Rep.* 490; *Kehoe* v. *Borough of Rutherford,* 74 *N. J. L.* 659; 65 *Atl. Rep.* 1046; *Garrison* v. *Fort Lee,* 92 *N. J. L.* 566; 106 *Atl. Rep.* 381; *Ennever* v. *Borough of Bergenfield,* 105 *N. J. L.* 419; 144 *Atl. Rep.* 809; *Olesiewicz* v. *Camden,* 100 *N. J. L.* 336; 126 *Atl. Rep.* 317.

We desire, moreover, to point out, although no point was made or argued on that score for plaintiff, that the discharge of the rule to show cause including as a reason that the verdict was against the weight of the evidence, operates to estop the defendant from arguing the questions of nonsuit or direction of a verdict, even though the same be reserved. *Molnar* v. *Hildebrecht Ice Cream Co.,* 110 *N. J. L.* 246; 164 *Atl. Rep.* 300. It is *res adjudicata.* *Robins* v. *Mack International Motor Truck Corp.,* 113 *N. J. L.* 377; 174 *Atl. Rep.* 551, and cases therein cited.

*Second:* Defendant contends that *Pamph. L.* 1935, *ch.*

460, completely absolves it from liability. This is not so.
The act provides: "(1) No county  *  *  *  shall be liable
for injury to the person from the use of any public grounds,
buildings or structures, any law to the contrary notwithstand-
ing  *  *  *." Obviously culverts do not come within the
purview or scope of that act.

*Third:* Defendant's final contention is that the trial court
committed reversible error in charging the jury to the effect
that "the defense of contributory negligence is not available
to the defendant in this case." We do not think so.

In the case of *McFarlane* v. *Niagara Falls,* 247 *N. Y.* 340;
160 *N. E.* 391; 57 *A. L. R.* 1 (1928), the New York Court
of Appeals (opinion by Chief Justice Cardozo), fully dis-
cussed the effect of contributory negligence in an action for
damages caused by a nuisance. In a comprehensive annota-
tion to that opinion (57 *A. L. R.* 7), the editor thereof says,
among other things:

"The question as to the applicability of the doctrine of
contributory negligence in cases of nuisance is somewhat
obscured, not only by the distinction which the McFarlane
case draws between nuisances absolute and nuisances having
their origin in negligence which is the substance of the wrong,
but also by the distinction between conduct on the part of the
person complaining of the nuisance which contributes to the
creation or maintenance thereof, and conduct which bears
on his duty to minimize, or not add to, the injurious conse-
qences of a nuisance for the creation or maintenance of which
he is not responsible.

"While the cases are not as numerous or as satisfactory in
their discussion as might be expected from the fundamental
nature of the question, those that have directly considered
the point are in substantial agreement that the ordinary rule
of contributory negligence, which defeats recovery altogether
in actions based on negligence as distinguished from nuisance,
does not apply in case of an absolute nuisance. In other
words, one is not precluded from recovering the damages
which are the proximate result of an absolute nuisance (that
is, a nuisance, the substance of the wrong in respect of which

is not negligence) by the fact that by the exercise of ordinary care on his own part he could have avoided the injury or damage altogether, or by the fact that, acting independently, and not in concert with the other party, he may have been guilty of acts of omission or commission similar to those upon which the nuisance complained of is predicated."

In *Hill* v. *Way* (1933), 168 *Atl. Rep.* 1, the Supreme Court of Connecticut held that an action for damages caused by absolute nuisance is not controlled by rules governing actions for negligence, *and that the defense of contributory negligence is unavailable.* (Italics supplied.) But that the plaintiff knowingly and voluntarily assumed danger is a good defense. The court says this:

"Nuisance as a legal concept has more than one meaning. Where it does not have its origin in negligence, it is sometimes characterized as an 'absolute' nuisance, in which case a plaintiff's recovery is not barred, save by 'fault so extreme as to be equivalent to invitation of injury or, at least, indifference to consequences.' *McFarlane* v. *Niagara Falls,* 247 *N. Y.* 340, 347, 348; 160 *N. E. Rep.* 391, 394; 57 *A. L. R.* 1; *Hoffman* v. *Bristol,* 113 *Conn.* 386, 393; 155 *Atl. Rep.* 499; 75 *A. L. R.* 1191. An action for damages caused by an absolute nuisance is not controlled by the rules which govern an action for negligence, and the defense of contributory negligence which we apply in the latter is not available to a defendant. *It is a competent and permissible defense, however, that the plaintiff, with knowledge of the danger, voluntarily assumed it.* While the distinction between this assumption of risk and the defense of contributory negligence is narrow in fact and not always an easy one to draw in varying circumstances, it often has a vital bearing on the rights of the parties to the action. *Bohlen, Studies in the Law of Torts* 514, 515; *McFarlane* v. *Niagara Falls, supra,* at page 393 of 160 *N. E. Rep.;* 247 *N. Y.* 340. On the other hand, where the nuisance is not an absolute one, but is one grounded in and the result of negligence, the plaintiff cannot recover unless he can establish reasonable care on his own part in the situation confronting him. 'At least where the substance

of the wrong [nuisance] is negligence, a plaintiff, though pleading nuisance, is under a duty to show care proportioned to the danger. Reasonable care is merely care so proportioned. The danger may be seen or unseen. If seen, there must be an effort to avoid it. If unseen, the inquiry will be whether one using a street as travelers commonly do, would perceive the danger and escape it.' *McFarlane* v. *Niagara Falls, supra,* at page 347 of 247 *N. Y.;* 160 *N. E. Rep.* 391, 393. Illustrative comments bearing more or less directly upon the distinction between the two classes of nuisance may be found in the following cases, among others; *Muller* v. *McKesson,* 73 *N. Y.* 195; 29 *Am. Rep.* 123; *Lynch* v. *McNally,* 73 *N. Y.* 347; *Worth* v. *Dunn,* 98 *Conn.* 51, 62; 118 *Atl. Rep.* 467; *Southern New England Ice Co.* v. *West Hartford,* 114 *Conn.* 496; 159 *Atl. Rep.* 470." (Italics supplied.)

"As a general rule, contributory negligence in its ordinary meaning is not applicable to an action sounding in nuisance." Section 29, 2, 46 *C. J.* 665. See, also, section 107, 20 *R. C. L.* 493.

In *Thompson* v. *Petrozello,* 5 *N. J. Mis. R.* 645, 648; 137 *Atl. Rep.* 835 (1927), this court (Kalisch, Katzenbach and Lloyd), said:

"We are not to be understood as intimating that contributory negligence can be successfully set up as a defense where the tort consists of a public nuisance. In such a case, as that of a nuisance, where a person knows of the danger and voluntarily assumes the risk thereof and sustains an injury, it is well settled by the cases, under the doctrine of assumption of risk, he is debarred of a recovery."

A fair construction of that holding simply means that contributory negligence is not available as a defense where the wrong complained of amounts to a public nuisance, but if the facts proved were to show that claimant knew of the danger, *i. e.,* the nuisance, and voluntarily assumed the risk thereof, he would be barred from recovery, under the doctrine of assumption of risk.

Judgment is affirmed, with costs.