15035

MORISON *ET AL.* v. RAWLINSON, CHIEF OF POLICE *ET AL*

(7 S. E. (2d), 635)

26

October, 1938.

*Messrs. C. T. Graydon* and *Legare Bates,* for appellants,

*Messrs. Colin S. Monteith, Jr.,* and *Paul Cooper,* for respondents,

March 7, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This suit was instituted and a temporary injunction obtained by the appellants for the purpose of restraining the enforcement by the respondents, the Chief of Police and the police department of the City of Columbia of a resolution passed by the City Council, alleged to be invalid. By the terms of this resolution the religious worship conducted by the appellants and the other members of The House of Prayer, was declared to be a public nuisance, and the Police Department of the City of Columbia was ordered to forthwith abate the nuisance, and to close and keep closed The House of Prayer. This order was immediately carried into effect by the Police Department.

The purpose of the proceeding is to enjoin the City of Columbia and its officers from interfering with and molesting the plaintiffs in what they allege is their worship of God. This is a representative action, and a permanent injunction is sought.

The complaint alleges, in substance, that the plaintiffs are the officers and representatives of a religious denomination known as The House of Prayer, which owns valuable property in the form of a church building in the City of Columbia wherein they conduct their church services; that without notice, a petition was submitted to the City Council asking that their church building be closed, and that the services conducted by them therein be abated as a public nuisance. It is further alleged that pursuant to this petition the City Council passed a resolution, without giving the plaintiffs an opportunity to be heard, declaring the place of worship a nuisance, and directing the Police Department to forthwith close the church.

In taking these steps the plaintiffs allege that the City Council, under the circumstances set forth, was without power or authority to declare The House of Prayer a nuisance, and that in so doing it abridged the right of plaintiffs to freedom of religious worship, and denied them due process of law as guaranteed by the State and Federal Constitutions.

By their answer and return, the respondents admit that the resolution referred to was adopted, and that under its authority the church was closed as a public nuisance. They further allege that the service or worship conducted in the church was carried on in such a disorderly and riotous manner that it constituted a public nuisance, necessary to be abated by the municipal authorities. The defendants deny that the action taken by the City Council was without power or authority of law, and they specifically allege that the City Council is clothed with power, upon petition, to declare the church a public nuisance, without notice, and that it is vested with authority to abate it.

Upon the return to a rule to show cause, the Circuit Court referred the case to the Master for Richland County to take the testimony offered, and, until the case could be heard upon its merits, restrained the defendants from attempting to put into effect the resolution referred to. By this order the terms of the temporary injunction first issued were modified so as to provide that the plaintiffs should be allowed, pending the determination of the case, "to worship only up to the hour of ten o'clock P. M. on any night, and any holding of the meeting beyond said time is not protected by the terms and conditions of this or the order heretofore issued." The order further granted "the right to the defendant and those under him, peace officers of the City of Columbia, to at all times prohibit and prevent the plaintiffs from engaging in disorderly or boisterous conduct; from congregating in and about the streets outside of said house of worship, and also any violation of law which is defined either in the state law or by city ordinance."

Much testimony offered by both sides was taken before the Referee. This testimony was reported to the Court, and thereafter, upon a full hearing, the Court by its decree denied the injunction prayed for by the plaintiffs, dissolved the temporary restraining order, as modified, and dismissed the complaint.

We proceed to consider the first question presented by the appeal: Do the plaintiffs and those they represent, members of the religious sect known as The House of Prayer, so conduct their service and worship as to constitute a public nuisance?

In 1933, a group of Negroes, the plaintiffs and those whom they represent, purchased a lot of land in the City of Columbia, known as 2549 Cherry Street, and applied for and obtained from the City Council permission to erect thereon a building within which they proposed to conduct their services. The cost of the lot and building represent an investment of approximately $3,100.00. Before the building permit was issued by the Council, citizens living in the neighborhood where the church was to be built protested, upon the ground that the establishment of this church, with its accustomed form of worship, would create a nuisance in the community. Council, however, granted the building permit upon the assurance from those representing The House of Prayer that the services would not be conducted in such a manner as to give public annoyance.

Thereafter, in March, 1938, numerous white residents living in the vicinity of the church building presented a petition to the City Council setting forth, in substance, that the services or worship as conducted at The House of Prayer constituted a public nuisance, and prayed that the City Council take steps to abate it. It was upon consideration of this petition that the City Council, on March 29, 1938, adopted the resolution to which we have referred. The plaintiffs had no notice of the filing of the petition, and as already stated had no opportunity to be heard before this resolution was passed.

Many witnesses living in the neighborhood of the church were sworn, both by the plaintiffs and the defendants, who gave in repetitious detail the procedure and practice of worship followed by the church members. They do not disagree thereabout in any essential particular. Among these witnesses were five police officers, one of whom resided in the community where the church is located.

The evidence shows that the plaintiffs dance in the church, and, in the course of the meeting, give forth weird and unearthly outcries. There is loud shouting, clapping of hands in unison, and stamping of feet. The incessant use of drums, timbrels, trombones, horns, scrubbing boards and wash tubs add to the general clamor. Some of the votaries are moved to testify; others enter an hypnotic trance. The central pillars of the church are padded to protect them from injury during their transports. The tumult can be heard for many city blocks. Meetings are carried on daily from early hours in the evening until the early hours of the morning. Boisterous and disorderly throngs, unable to enter the crowded building, congregate in the adjoining streets. Fights often occur. White residents who live in the vicinity testified that life is made unbearable by the continual din, which deprives them of all peace and tranquility, and makes sleep impossible.

On more than one occasion police officers have been summoned not only by officers of The House of Prayer, but by local residents, to quell disorders among those present in the church as well as those congregated outside. On one occasion a police officer arrested fifteen persons, taken from within and from without the church, for disturbing the peace. Upon another occasion the police attempted to arrest the head usher of the church who was engaged in a fight. He resisted arrest with a blackjack and a knife. Police officers and others testified that there is attached to and adjoining the church building a stand operated by The House of Prayer, in which beer, soft drinks and food are sold.

Witnesses for the plaintiffs denied the sale of beer. Plaintiffs' witnesses assert that the members of the church do not participate in the prevalent disorder, but that it is carried on by visitors attending the services. The section of the city where The House of Prayer is located is a thickly populated residential area.

The evidence leaves no room for doubt that this constant noise, with its unending repetition, accompanied by frequent breaches of the peace, tends to shatter the nervous system and impair the health of those subjected to it, or coming within its influence, except perhaps those actively participating therein.

From a very careful consideration of the testimony and the law, and despite a deep and sympathetic understanding of this type of worship carried on by the members of this Negro church, it is impossible for us to escape the conclusion that the services as conducted on this location constitute a public nuisance which is detrimental to the peace, health, and good order of the community in which it is practiced. Nor can there be any doubt of the fact that if the municipal authorities were authorized and empowered to abate nuisances, it was their duty to act in the premises.

A nuisance to be a public nuisance must be in a public place or where the public frequently congregate, or where members of the public are likely to come within the range of its influence, for if the act of use of property be in a remote and infrequented locality, it will not be, unless *malum in se,* a public nuisance. Black's Law Dictionary, 2d Ed., page 835.

We think, however, that the lower Court erred in holding that the City Council of Columbia, as disclosed by the record, was vested with power to declare The House of Prayer a nuisance. Or, if it had the authority, that under the circumstances here, it was empowered to abate the nuisance without giving the plaintiffs an opportunity to be heard in the first instance.

The City of Columbia has no ordinance which authorizes the exercise of the power to abate nuisances. Its ordinances provide only for the criminal prosecution of those conducting or maintaining a nuisance. Revised Ordinances, City of Columbia, 1933, Section 609. It is said, however, that such power is derived from Section 7233, Code 1932, which reads: "The city councils and town councils of the cities and towns of the State shall, in addition to the powers conferred by their respective charters, have power and authority to make, ordain and establish all such rules * * * and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns, or respecting any subject as shall appear to them necessary and proper for the security, welfare and convenience of such cities and towns, or for preserving health, peace, order and good government within the same. * * *"

In addition to this, such power is referred to an Act of the General Assembly amending the charter of the City of Columbia, approved February 26, 1870, which, among other things, provides, "The said mayor and aldermen of the City of Columbia shall have power to abate and remove all nuisances in the said City."

But these sources of authority do not meet the situation here. In our opinion the proper construction of the statutory language referred to is that the city is clothed with authority to declare by general ordinance what shall constitute a nuisance, that is to say, the city may by such ordinance define, classify and enact what things or classes of things are injurious to the health or inimical to peace and good order, and under what conditions and circumstances such specified things are to constitute and be deemed nuisances. But not that the City Council may by mere resolution or motion declare any particular thing a nuisance which has not theretofore been pronounced to be such by law, or so adjudged by judicial determination. *Denver v. Mullen,* 7 Colo., 345, 353, 3 P., 693.

The power to declare what shall be a nuisance and to abate it is ordinarily not a self executing one. It must be exercised only in accordance with ordinances or by-laws regularly and legally adopted applicable alike to all of the class. *Sevier v. Barbourville,* 180 Ky., 553, 204 S. W., 294, L. R. A., 1918-F, 1128; *Donohoe v. Fredlock,* 72 W. Va., 712, 79 S. E., 736; *Lake v. Aberdeen,* 57 Miss., 260, 263; 43 C. J., § 521, p. 404. Also see *Schloss Poster Advertising Co. v. City of Rock Hill,* 190 S. C., 92, 2 S. E. (2d), 392.

We have found no authority dissenting from the general proposition that the power to declare a nuisance must be exercised by an ordinance general in its character operating uniformly upon all persons and upon all property of the same character within the city. And it is generally held that a municipal corporation cannot make a thing a nuisance by merely declaring it to be such. Such a declaration is not a final determination of the question. It is subject to review by the Courts, both as to its reasonableness and as to the thing inveighed against being in fact a nuisance. Section 7233, *supra,* provides in terms that the city and town councils may legislate and regulate, but it must be done by ordinances and rules duly enacted and adopted.

We are also of the opinion that the person or persons who are responsible, allegedly for the nuisance should be given reasonable notice and a fair hearing before the particular thing or the act sought to be abated is declared to be a nuisance by the City Council, in the absence of a public emergency.

We are not asserting that where the particular thing or the act sought to be abated is made a nuisance by statute or is characterized as such by the common law any inquiry or notice is necessary, because the question as to whether it is in fact a nuisance is already determined. But is is fundamental law that when the act or thing is not made so by the common or statute law, as in this case, the

question as to whether it is or is not a nuisance is a judicial one, to be passed upon by the City Council having power to abate it, after notice to the party interested. 43 C. J., §§ 522, 527, pp. 405, 407.

In the charter provision referred to above, the general authority is given to the City of Columbia to abate and remove all nuisances, but the statute declares no particular thing to be a nuisance. It is left to the City Council to prescribe by general ordinance what shall constitute a nuisance. And the record discloses that there is not any such ordinance.

The nuisance with which we are here concerned belongs to that class of nuisances which in their nature are not nuisances *per se,* but which may become so by reason of their locality, surroundings, or the method in which they may be conducted or managed, and we perceive no sound reason why a general ordinance may not be passed covering this and similar situations.

However, the foregoing holding does not mean that the judgment below should be reversed. All of the parties are in a Court of equity, and where the Court of equity rightfully assumes jurisdiction for one purpose, it may grant all the relief, either legal or equitable, to which any of the parties show themselves entitled, in the subject-matter of the controversy. *Heyward v. Long,* 178 S. C., 351, 183 S. E., 145, 114 A. L. R., 1130; 21 C. J., § 126, p., 147. The defendants in their answer and return, upon sufficient allegations, raised the issue that the conduct of the plaintiffs constituted a public nuisance, and prayed that the complaint be dismissed, the temporary restraining order dissolved, and for such other and further relief as may be just and proper. The plaintiffs specifically consented to the order referring the whole matter to the master to take the testimony, and all of the testimony on both sides is directed to the question, whether the acts of the plaintiffs establish a nuisance. The appellants have been fully heard, and, in our opinion, have now had their day in Court.

The appellants urge with great earnestness that so much of the injunction be retained as allows them to continue their services on any night up until ten o'clock p. m. In this case we fully realize that to dissolve the injunction is severe in its consequences to the plaintiffs, and we are in full accord with the rule that the abatement of a public nuisance should not be allowed except when the necessity therefor is clearly and conclusively made out. It is not enough to show a profitable, eventual or contingent injury, but it must be shown to be inevitable and undoubted. Of course a thing which merely threatens to become a nuisance will be enjoined only where the Court is satisfied that the threat will become a certainty; and, since the remedy is so severe, resulting often in wholly depriving an owner of the use of his property, the Court will proceed with the utmost caution in restraining such threatened and possible injury.

It is, however, evident from the testimony of the plaintiffs themselves that their form of. worship is inseparably connected with and accompanied by unrestrained noise and consequent public disturbance. The things they do are habitual. It is an integral part of what they congregate for. That the nuisance will continue is very plainly and clearly indicated in the testimony of W. M. Morison, the pastor in charge of The House of Prayer, who in his testimony gave Biblical citations for the clapping of hands, shouting, the making of a joyful noise, and the worship of the Lord both morning and evening. Nor is there anything in the evidence which would indicate that this form of worship can be or would be changed so that noise, to the injury of the public, would constitute no part of it.

It is not a question here of prohibiting the free exercise of religious worship in any constitutional sense. It is a question of peace and public order in a thickly populated community. The plaintiffs are entitled to maintain and practice any religious belief or religious principle,

or teach any religious doctrine, which does not violate the laws of morality and property, and which does not infringe upon personal rights. As was said in *Watson v. Jones,* 13 Wall., U. S., 679, 728, 20 L. Ed., 666, "The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect." It was said in *Davis v. Beason,* 133 U. S., 333, 10 S. Ct., 299, 300, 33 L. Ed., 637, "It was never intended or supposed that the amendment (first amendment to the United States Constitution) could be invoked as a protection against legislation for the punishment of acts inimical to the peace, good order and morals of society." And in *In re Frazee,* 63 Mich., 396, 30 N. W., 72, 75, 6 Am. St. Rep., 310, the Court of that state, in passing upon a like question, said: "There is no legal authority to restrain belief, but no one can lawfully stretch his own liberty of action so as to interfere with that of his neighbors, or violate peace and good order."

Judgment affirmed.

Mr. Chief Justice Bonham, Mr. Justice Carter and Mr. Acting Associate Justice L. D. Lide concur.

Mr. Justice Baker did not participate.