15350

STATE v. TURNER *ET AL.*

(18 S. E. (2d), 372)

*Mr. A. H. Dagnall,* and *Mr. C. B. Earle,* both of Anderson, for appellants,

*Mr. Rufus Fant, Solicitor,* for respondent,

492

January 9, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

This is an appeal from a judgment of conviction for maintaining a public nuisance, in the keeping, management and operation of a disorderly house in and about a place known and styled as the Circle Bar, on a public highway about one mile from the City of Anderson. The indictment was in two counts. A motion to quash was sustained as to the second count, and overruled as to the first.

The first question for decision arises upon the action of the Court in overruling the motion to quash the first count of the indictment.

The indictment charges that the keeping and maintenance of the road house known as the Circle Bar is detrimental to the peace, happiness, lives, safety and good morals, of the people of the State living near, resorting to, and passing the said place so kept and maintained. It continues as follows:

"(1) At the times and places aforesaid, a certain public, common, disorderly, ill-governed and ill-famed house, which consisted of a number of buildings each appurtenant to the other, and place, did wilfully and unlawfully keep and maintain and assist in the keeping and maintenance;

"(2) At the times aforesaid in said house and at said place, fighting, cursing, the making of loud and disturbing noises and music, drinking intoxicating liquors, become intoxicated, engaging in lewd, unchaste, improper and immoral conduct and otherwise misbehaving themselves, did wilfully and unlawfully do;

"(3) At the times aforesaid in said house and at such place evil disposed persons, rowdy persons, persons of evil name, fame and conversation, as well men as women, to come together, did wilfully and unlawfully permit, cause and procure;

"(4) And the said persons in and at said house and place aforesaid there to remain drinking intoxicating liquors and beverages, becoming intoxicated, cursing, quarreling, fighting, making loud and disturbing noise, music and conversation, engaging in lewd, unchaste, improper and immoral conduct and practices and otherwise misbehaving themselves, did wilfully and unlawfully cause, permit and suffer; to the evil example of all others in like cases offending."

The indictment is in the ordinary common-law form and accurately describes the offense. The offense, as charged, is that of a common nuisance, and it is necessary that the indictment should contain facts to show that a common nuisance has been created or permitted. This is done by allegation of such facts as show that the traverser maintains, promotes, or continues what is noisome and offensive, or plainly hurtful to the public, or is a public outrage against

common decency or common morality, or which tends plainly and directly to the corruption of the morals, honesty and good habits of the people; the same being without authority or justification of law. 3 Greenleaf on Ev., Section 184, and the authorities there cited; *Beard v. State,* 71 Md., 275, 17 A., 1044, 4 L. R. A., 675, 17 Am. St. Rep., 536; *Ehrlick v. Commonwealth,* 125 Ky., 742, 102 S. W., 289, 10 L. R. A. (N. S.), 995, 128 Am. St. Rep., 269; *Commonwealth v. Cincinnati, New Orleans & Texas Pacific R. Co.,* 139 Ky., 429, 112 S. W., 613, 18 L. R. A. (N. S.), 699, Ann. Cas., 1912-B, 427.

Appellants contend that the indictment is invalid for uncertainty, duplicity and misjoinder, and because some of the acts charged against the defendants were not criminal nuisances under the common law. This criticism in our opinion is unwarranted and is without merit.

It is generally held that an indictment or information which charges a defendant with two or more distinct offenses in the same count is bad for duplicity, but this indictment and the offense charged do not fall within this category. An indictment for keeping a disorderly house is not duplicitous because it states several distinct acts of disorder constituting a common nuisance. Wharton's Cr. Law (8th Ed.), Volume 2, Section 1450; Bishop New Cr. Proc., Volume 2, Section 106. And it will be noted that all of the acts are charged conjunctively and not as distinguishable criminal acts.

An indictment charging the various purposes for which a disorderly house was used, constituting the means by which the nuisance was created, does not render the indictment duplicitous where they are not charged as distinct offenses, but merely as elements which make up the single offense of a nuisance. 18 C. J. § 58, p. 1253; 27 C. J. S., Disorderly Houses, § 11; *State v. Beckroge,* 49 S. C., 484, 27 S. E., 658.

"As a house may be disorderly by reason of its use for bawdry, or for common tippling, or for common gaming,

or for disturbances of the neighborhood through quarreling and loud noises; so, *a fortiori,* it may become so by combining any two or more of these evil uses. The indictment, therefore, may charge, in a single count, any and all of these various forms of the offense conjunctively, and it will not be double, and will be sustained by proof of any one of the uses." Bishop New Cr. Proc., Volume 2, Sections 106-2.

Indictments containing substantially the same averments have been generally upheld as not being duplicitous or lacking in clearness or certainty. *State v. Brady,* 16 R. I., 51, 12 A., 238; *Commonwealth v. Perry,* 146 Mass., 203, 15 N. E., 484; *Commonwealth v. Kimball,* 7 Gray, Mass., 328; *Thatcher v. State,* 48 Ark., 60, 2 S. W., 343.

It is argued that the alleged violation of the liquor laws does not constitute a criminal common-law offense, and that one can legally have in possession or drink intoxicating liquors without violating the statutory law of this State; that disorderly conduct is not an offense at common law; and that such offenses as cursing, quarreling, fighting, drunkenness and offensive language could not be considered as sufficient to constitute a nuisance under the common law. It is further contended that music and conversation are not a criminal nuisance at common law; nor is a dance hall.

These things are not charged as constituting a nuisance *per se.* The defendants stand charged with keeping and maintaining a house in which idle, vicious, and dissolute persons are encouraged to assemble, and are permitted to drink, swear, quarrel, fight and make loud and disturbing noises, and engage in lewd and immoral conduct, to the disturbance and annoyance of the neighborhood.

In 20 R. C. L. (Nuisances), Section 7, page 384, we find: "A public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights. Such nuisances always arise out of unlawful acts. According to Blackstone (4 Com., 166), 'common or public nuisances are offenses against the public order or economical regimen of

the state, being either the doing of a thing to the annoyance of the king's subjects or the neglecting to do a thing which the common good requires.' * * * The difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing itself. It is public because of the danger to the public. It is private only because the individual as distinguished from the public has been or may be injured. Public nuisances are indictable. Private nuisances are actionable, either for their abatement or for damages, or both * * * (p. 385, Section 8). In a general way, the courts frequently say that the injury from a nuisance, in order to constitute the nuisance a public one, must affect 'the public.' But it is admittedly a difficult question to tell whether a nuisance is so general in its character—that is, affects a sufficient number of persons—to justify its characterization as a 'public nuisance.' Of course in one sense the public is everybody; but manifestly that is not the sense in which the word is used in the law relating to nuisances. No doubt a nuisance is public if it affects the entire community or neighborhood, or any considerable number of persons. Furthermore, it undoubtedly is true that a nuisance is a public one if it occurs in a public place, or where the public frequently congregate, or where numbers of the public are likely to come within the range of its influence; and it seems to be sufficient to constitute acts or conditions a public nuisance if injury and annoyance are occasioned to such part of the public as come in contact therewith." See *Morison v. Rawlinson,* 193 S. C., 25, 7 S. E. (2d), 635.

In Clark's Criminal Law (2d Ed.), Hornbook Series, Section 115, page 346, we find: "Whatever tends to endanger life, or generate disease, and effects the health of the community; whatever shocks the public morals and sense of decency; whatever shocks the religious feelings of the community, or tends to its discomfort—is generally, at common law, a public nuisance, and a crime * * * (page 348). Disorderly houses, including houses of ill fame and

drinking or tippling houses, kept in such a way as to annoy and scandalize the public, are nuisances at common law."

While it is true that dancing is generally regarded as an innocent amusement, and while drinking may be engaged in without becoming a nuisance, yet if the dancing and the drinking are accompanied by swearing and drunkenness, making loud and disturbing noises, and otherwise misbehaving to the annoyance of the public or the neighborhood, and violative of public decency, there can be no doubt that such acts will constitute a nuisance. A public dance hall is not a nuisance *per se,* but it may become a nuisance by reason of surrounding circumstances. It may become a nuisance by the manner in which it is conducted, and by the conduct of the persons assembling in and around it. Whether or not it is a nuisance is a question of fact. 46 C. J., § 145, p. 699. *State v. Everhardt,* 203 N. C., 610, 166 S. E., 738.

Although the defendants may have a license for the sale of wine and beer, and the drinking of it on the premises violates no statutory law, they have no right to habitually allow the assembling in and around the Circle Bar of noisy, drunken, boisterous crowds, whose noise and profanity disturb the peace and quiet of the public coming within the range of its influence. One who knowingly suffers or permits such conduct commits a public nuisance. *Jung Brewing Company v. Commonwealth,* 123 Ky., 507, 96 S. W., 595, 124 Am. St. Rep., 376.

Likewise music is not *per se* a nuisance. It may be or become a nuisance whether it is vocal or instrumental, as for instance by reason of the noise it makes to the annoyance of the neighborhood, and, also, if its tendency is habitually to bring together in a vicinity or at a person's residence or place of business large crowds of noisy, dissolute and disorderly people.

Error is assigned to the definition given by the trial Judge in his instructions to the jury as to what constitutes a dis-

orderly house or a nuisance. It is said that such definition is incomplete. There is no merit in this contention.

██ With reference to what constitutes a nuisance, the trial Judge gave a full and elaborate charge, conforming to the principles and definition already discussed. He instructed the jury:

"Any use of property or thing which is of itself hurtful to the health, peace, happiness, safety or morals, or outrages the decency of the community, would constitute a nuisance."

"A public or common nuisance is not necessarily one affecting the entire community of the state or of a particular subdivision of the state; it is public if it affects the surrounding community generally or the people of some local neighborhood; it is sufficient if it operates upon such members of the public as are brought into contact with the conditions that constitute the alleged nuisance."

"A nuisance to be a public nuisance must be in a public place, or where the public frequently congregates, or where members of the public are liable to come within the range of its influence."

"If one knowingly suffers or permits noisy, boisterous and lawless crowds of people to assemble on his place of business so as to disturb the peace and quiet of the public, then the one maintaining or permitting those things to be done would be guilty of maintaining a nuisance."

"If one maintains a place where people are allowed to frequent for immoral purposes, such a place would be a common or public nuisance, because it is a criminal offense and affects the happiness, the tranquility and the morals of the community. And it is not necessary that such a place for such purposes be conducted openly or notoriously to constitute a nuisance."

██ The instructions with reference to what constitutes a disorderly house are likewise clear and explicit. He charged: "A disorderly house is a house kept in such a way as to disturb, annoy or scandalize the surrounding community generally or the people of the general com-

munity." This definition is supported by all well-recognized authorities. Annotation, 4 L. R. A. 675; 17 Am. Jur., Section 2, page 104; 27 C. J. S., Disorderly Houses, § 1, p. 299.

The chief criticism directed against the definition by the appellants is that it should have included the statement that such house must be a place of public resort. However, this is implicit in the entire charge. Furthermore, if the appellants had wished a fuller statement they should have requested it when the trial Judge at the completion of his charge offered a full opportunity for the defendants to make suggestions thereabout.

The motion for a new trial was made upon the same grounds as are considered herein, and was properly overruled, in our opinion.

All of the questions raised by the exceptions have been by us carefully considered. They have been with much zeal and ability argued by counsel on both sides, and are of great importance in the correct and faithful administration of the criminal law of the State. After careful examination we find no error in the trial below.

Judgment affirmed.

Mr. Chief Justice Bonham, Messrs. Associate Justices Baker and Stukes, and Mr. Acting Associate Justice G. Dewey Oxner concur.