588 S.E.2d 116

Karl Albert OVERCASH, III, Appellant,

v.

SOUTH CAROLINA ELECTRIC &
GAS COMPANY, Respondent.

No. 3667.

Court of Appeals of South Carolina.

Heard June 11, 2003.

Decided July 21, 2003.

Withdrawn, Substituted and Re-filed Oct. 17, 2003.

F. Patrick Hubbard and Fred Walters, both of Columbia, for Appellant.

John M. Mahon, Jr., Robert A. McKenzie, and Gary H. Johnson, all of Columbia, for Respondent.

HOWARD, J.:

Karl Albert Overcash, III, brought this private action for public nuisance against South Carolina Electric & Gas Company ("SCE & G"), seeking damages for personal injuries he sustained when the boat he was operating collided with a wooden dock constructed across a portion of Lake Murray. Overcash alleges the dock constituted a public nuisance and his "special" personal injuries give rise to a private cause of action. The circuit court disagreed and granted SCE & G's motion to dismiss Overcash's claim for failure to allege facts sufficient to constitute a cause of action pursuant to Rule 12(b)(6), South Carolina Rules of Civil Procedure. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

The pertinent facts alleged in Overcash's Complaint may be fairly summarized as follows. SCE & G was the owner and project manager of the hydroelectric facility commonly know as Lake Murray. Lake Murray is a navigable body of water within the applicable statutory definition.[1]

In 1964, Sarah and Crawford Clarkson purchased property on Lake Murray. They constructed a 250–foot long-wooden dock from their property to a small island located over 100 yards away. SCE & G allowed the dock to be built, deeded the island to the Clarksons reserving the sole right to enforce covenants to prevent a nuisance or dangerous condition, and granted a post-construction permit for the dock.

As part of its obligations to the Federal Energy Regulatory Commission ("FERC"), SCE & G conducted periodic, routine inspections of the Lake Murray shoreline for the purpose of identifying structures built in violation of FERC requirements. SCE & G had actual or constructive knowledge the

---

1. *See* S.C.Code Ann. § 49–1–10 (1987) ("All streams which have been rendered or can be rendered capable of being navigated by rafts of lumber or timber by the removal of accidental obstructions and all navigable watercourses and cuts are hereby declared navigable streams and such streams shall be common highways and forever free, as well to the inhabitants of this State as to citizens of the United States, without any tax or impost therefor, unless such tax or impost be expressly provided for by the General Assembly....")

Clarksons' dock existed and constituted an unlawful obstruction of the navigable waterway.

On the night of July 17, 1999, Overcash was traveling home by boat from his job at Lake Murray Marina. His boat collided with the dock and he was thrown forward and sustained severe personal injuries.

Overcash brought this action seeking damages against SCE & G for the injuries he sustained, alleging, among other things, statutory and common law public nuisance. SCE & G moved to dismiss Overcash's public nuisance cause of action pursuant to Rule 12(b)(6), South Carolina Rules of Civil Procedure, arguing: 1) a private cause of action for public nuisance does not exist pursuant to South Carolina Code Annotated section 49–1–10 (1987); and 2) personal injuries are not "special injuries" and thus cannot be the basis for a private action for public nuisance. The circuit court agreed, and Overcash appeals.

## STANDARD OF REVIEW

A motion to dismiss a claim pursuant to Rule 12(b)(6), SCRCP, must be based solely on the allegations set forth on the face of the complaint. The motion will not be sustained if the facts alleged and the inferences reasonably deducible therefrom would entitle the plaintiff to relief on any theory of the case. *Washington v. Lexington County Jail*, 337 S.C. 400, 404, 523 S.E.2d 204, 206 (Ct.App.1999); *McCormick v. England*, 328 S.C. 627, 632–33, 494 S.E.2d 431, 433 (Ct.App.1997). "[A] judgment on the pleadings is considered to be a drastic procedure by our courts." *Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991). Therefore, pleadings in a case should be construed liberally and the trial court and this Court must presume all well pled facts to be true so that substantial justice is done between the parties. *See Justice v. Pantry*, 330 S.C. 37, 42, 496 S.E.2d 871, 874 (Ct.App.1998).

## DISCUSSION

### I. Statutory Cause of Action

Overcash argues the circuit court erred by holding section 49–1–10 does not provide a private, statutory cause of

action for public nuisance. We agree, as we believe our decision is controlled by our supreme court's holding in *Drews v. E.P. Burton & Co.*, 76 S.C. 362, 57 S.E. 176 (1907).

In *Drews*, the plaintiff alleged injuries resulting from the defendant's obstruction of a navigable stream. At the close of the plaintiff's case, the defendant moved for nonsuit, arguing the plaintiff failed to produce evidence of negligence. The circuit court denied the motion but charged the jury that it must find negligence to award damages to the plaintiff. The jury subsequently returned a verdict for the plaintiff and awarded damages.

The defendant appealed, arguing the plaintiff failed to prove negligence and thus could not sustain a cause of action for obstruction of a navigable stream.

Our supreme court ruled the plaintiff was not required to demonstrate negligence to state a cause of action. Rather, the complaint appropriately alleged two causes of action—one for negligence and one for public nuisance. Consequently, the court ruled that notwithstanding the circuit court's erroneous jury charge "in so far as it related to the cause of action based upon nuisance, [the error] was ... favorable to the ... [defendant]," and thus did not prejudice the defendant.

More specific to our analysis here, the court stated, "[w]hen a person sustains a special injury ... arising from the obstruction of a navigable stream, he is entitled to recover damages, on the ground that such obstruction constitutes a nuisance ... [pursuant to section 1335 of the Civil Code of 1902], as well as at common law." 76 S.C. at 366, 57 S.E. at 178.[2]

Section 1335 provided in pertinent part, "if any person shall obstruct [a navigable water course], ... such person shall be deemed guilty of nuisance, and such obstruction may be abated as other public nuisances are by the laws of this State." Similarly, section 49–1–10 provides, "[i]f any person shall obstruct any [navigable water course], ... such person shall be guilty of a nuisance and such obstruction may be abated as other public nuisances are by law."

---

**2.** *See Taylor v. Lexington Water Power Co.*, 165 S.C. 120, 120, 163 S.E. 137, 140 (1932) (quoting *Drews*).

It is clear from a reading of section 1335 and section 49–1–10 that the two statutes are, in substance, identical to one another. Thus, given our supreme court's interpretation of section 1335 in *Drews*, we hold the legislature intended to create a private, statutory cause of action for public nuisance when it subsequently enacted section 49–1–10. *See Whitner v. State*, 328 S.C. 1, 6, 492 S.E.2d 777, 779 (1997) ("[T]here is a basic presumption that the legislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted concerning related subjects."); *see also Daniels v. City of Goose Creek*, 314 S.C. 494, 501, 431 S.E.2d 256, 260 (Ct.App.1993) (holding where the law is unmistakably clear, the Court of Appeals is bound by decisions of the supreme court).

## II. Personal and Special Injuries

Overcash argues personal injury constitutes direct and special injury, and the trial court erred in holding that a plaintiff who suffers personal injury from colliding with a public nuisance blocking a public right of way does not have a right to recover damages for that injury, either at common law or pursuant to statute. We agree.

The argument is deceptively simplistic in its phrasing. However, neither this Court nor our supreme court have had occasion to rule on the precise question of whether personal injury, standing alone, constitutes the type of "special" or "particular" injury necessary to maintain a private action for public nuisance in South Carolina. Likewise, no reported decision expressly determines whether, as found by the circuit court, some property right must be injured in conjunction with a personal injury so that a personal injury may serve as a harm sufficient to allow a private action for public nuisance. Finally, no reported decision specifically determines whether the danger of colliding with an obstruction erected in a public waterway is a different type of harm from that presented to the general public.

To properly address these inquiries we find it necessary to explore the historic development and application of nuisance law in this state, both generally and particularly as it concerns a private right of action for public nuisance. In doing so, we venture, with some amount of consternation, into what Dean

William Prosser fittingly referred to as the "impenetrable jungle ... which surrounds the word 'nuisance.'" W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser & Keeton on Torts* § 86 at 616 (5th ed., West 1984).

## A. Historical Overview

In part, the mystery surrounding the common law of nuisance arises because, although the word "nuisance" literally means nothing more than harm, injury, inconvenience, or annoyance, the term has at times meant "all things to all people, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach in a pie." *Id.* (footnote omitted).

Modern American public nuisance law is traceable to the medieval English criminal writ of "purpresture." *See* 4 William Blackstone, *Commentaries on the Laws of England* 167 ("Where there is a house erected, or an enclosure made, upon any part of the king's demesnes, or of an highway, or common street, or public water, or such like public things, it is properly called a purpresture."). At the time of its emergence, purpresture was not a tort but rather a criminal remedy for infringement on the rights of the Crown (or general public), and was enforceable solely by indictment brought pursuant to the police powers of the sovereign. Keeton, *Prosser & Keeton on Torts,* § 86 at 617.[3]

The concept of a mutual sovereign and public right to seek redress beyond criminal sanctions for interference with the rights of the general public emerged in Sixteenth Century England with a line of cases "recogniz[ing] that a private individual who had suffered special damage might have a civil action in tort for the invasion of the public right." *Id.* at 618 n. 14. Seminal among the cases credited with contributing to the development of both the "special injury rule" and the less

---

**3.** Although the common law of private nuisance found its parentage at the same time, it springs from entirely different legal roots. The assize of nuisance, introduced in thirteenth century England, was a criminal writ affording incidental civil relief as redress for conduct on one person's land resulting in the invasion of the land of another. The assize of nuisance eventually gave way to the action on the case for nuisance, which remedy addressed only interference with the use or enjoyment of land. Keeton, *Prosser & Keeton on Torts,* § 86 at 617.

stringent "different in degree rule" is an "anonymous" 1536 King's Bench decision. Y.B. Mich. 27 Hen. 8, f. 26, pl. 10 (1536). The 1536 case involved an unnamed plaintiff who alleged the defendant obstructed the King's highway in an attempt to prevent the plaintiff from traveling from his house to his fields. In a one-sentence opinion, Chief Justice Bladwin, writing for the majority, concluded the plaintiff could not maintain the action:

> It seems to me that this action does not lie to the plaintiff for the stopping of the highway; for the King has the punishment of that, and he has his plaint in the [criminal court] and there he has his redress, because it is a common nuisance to all the King's [subjects], and so there is no reason for a particular person to have an [action on his case]; for if one person shall have an action by this, by the same reason every person shall have an action, and so he will be punished a hundred times on the same case.

*Id.*, *quoted as translated in* Denise E. Antolini, *Modernizing Public Nuisance: Solving the Paradox of the Special Injury Rule*, 28 Ecology L.Q. 755 (2001). In a brief but ultimately significant dissent, Justice Fitzherbert opined:

> I agree well that each nuisance done in the King's highway is punishable in the [criminal court] and not by an action, unless it be where one man has suffered greater hurt or inconvenience than the generality have; but he who has suffered such greater displeasure or hurt can have an action to recover the damage which he has by reason of his special hurt.

*Id.* (Fitzherbert, J., dissenting). Thereafter, Justice Fitzherbert set forth the following hypothetical which has become legendary in the labyrinthine path leading to the modern special injury rule:

> If one makes a ditch across the highway, and I come riding along the way in the night and I and my horse are thrown into the ditch so that I have great damage and displeasure thereby, I shall have an action here against him who made this ditch across the highway, because I have suffered more damage than any other person. So here the plaintiff had more convenience by this highway than any other person had, and so when he is stopped he suffers more damage

because he has to go to his close. Wherefore it seems to me that he shall have this action *pour ce special matiere* [for the special matter], but if he had not suffered greater damage than all other suffered, then he would not have the action.

*Id.* As Prosser noted centuries later: "It was Fitzherbert who was followed; and with this decision the crime of public nuisance became also a tort in any instance in which the plaintiff could show damage which was particular to him and not shared in common with the rest of the public." William L. Prosser, *Private Action for Public Nuisance*, 52 Va. L.Rev. 997, 1005 (1966) (footnote omitted).

### B. Modern Development

Similar to English courts, American courts, including South Carolina, continue to employ a broad definition of the term nuisance.

'Nuisance' has ... variously been defined as—

— conduct that is either unreasonable or unlawful and causes annoyance, inconvenience, discomfort, or damage to others.

— that which unlawfully annoys or does damage to others.

— anything that works injury, harm or prejudice to an individual or the public.

— anything which works hurt, inconvenience, or damage on another.

— anything which works or causes injury, damage, hurt inconvenience, annoyance, or discomfort to one in the legitimate enjoyment of his or her reasonable rights of person or property.

— anything which causes a well-founded apprehension of danger.

— anything that essentially interferes with the enjoyment of life or property.

— something that is offensive, physically, to the senses, and which, by such offensiveness, makes life uncomfortable.

58 Am.Jur.2d *Nuisances* § 1 (2002).

While numerous distinguishing considerations exist regarding what generally constitutes a nuisance, American courts

distinguish between private and public nuisances in the same manner as was historically employed under English common law. "The difference between public and private nuisance does not consist in any difference in the nature or character of the nuisance itself, but only in the degree, that is, in the extent or scope of its injurious effect." *Id.* at § 31 (footnotes omitted). "[A] public nuisance affects the public at large, while a private nuisance affects one or a limited number of individuals only. In other words, to be considered public, the nuisance must affect an interest common to the general public." *Id.* at § 32 (footnote omitted).

In South Carolina, "[a] public nuisance exists whenever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights." *State v. Turner*, 198 S.C. 487, 495, 18 S.E.2d 372, 375 (1942). Further, to be deemed public, the nuisance must affect a number of people. *See Morison v. Rawlinson*, 193 S.C. 25, 32, 7 S.E.2d 635, 638 (1940) (holding "[a] public nuisance must be in a public place or where the public frequently congregate"); *State v. Rankin*, 3 S.C. 438, 447 (1872) ("Whether it be one or the other [public or private] depends upon the extent of its existence."); *but cf. Bowlin v. George*, 239 S.C. 429, 434–35, 123 S.E.2d 528, 531 (1962) ("[A] nuisance may effect a considerable number of persons in the same manner and yet not be a public nuisance." (quoting *Woods v. Rock Hill Fertilizer Co.*, 102 S.C. 442, 450–51, 86 S.E. 817, 820 (1915))).

Besides the common law governing what constitutes a nuisance, certain conduct is statutorily prohibited in South Carolina such that a violation of the statute constitutes a nuisance. *See, e.g.*, S.C.Code Ann. § 49–1–10 (1987) (providing, in part, "[i]f any person shall obstruct any such stream, otherwise than as in Chapters 1 to 9 of this Title provided, such person shall be guilty of a nuisance and such obstruction may be abated as other public nuisances are by law").

Conforming to the development of English common law, American courts have universally held a public nuisance affecting a purely public right gives no right of action to an individual unless the individual has suffered some particular or special damage. Keeton, *Prosser & Keeton on Torts*, Nuisance § 90 at 646. Thus, where such a special damage exists,

the right of the injured individual to bring a tort action for nuisance subsists separately from the right of public officials to bring civil actions for nuisance, and of states to bring criminal actions against nuisance perpetrators. 58 Am.Jur.2d *Nuisances* § 35 (2002).

## C. The Special Injury Rule

Having universally adopted the general concept that special injuries will support private rights of action for special damages, American courts have found it an entirely more difficult task to determine what constitutes "special" or "particular" damage sufficient to support the private tort action for public nuisance. Courts have held a private individual may establish standing to bring an action for public nuisance merely by having sustained an injury in fact, and the concerns regarding a multiplicity of suits are satisfied by any means, such as by way of a class action. *See Akau v. Olohana Corp.,* 65 Haw. 383, 652 P.2d 1130 (1982). A separate and antiquated view holds it is sufficient to show one's injury is different in degree only. *See Carver v. San Pedro, L.A. & S.L.R. Co.,* 151 F. 334 (C.C.S.D.Cal.1906). However, most jurisdictions, including South Carolina, adhere to the view that the plaintiff in such an action must establish damages different in kind, not degree, from the damage shared by the general public stemming from the exercise of the same rights. *See generally Huggin v. Gaffney Dev. Co.,* 229 S.C. 340, 92 S.E.2d 883 (1956); *Brown v. Hendricks,* 211 S.C. 395, 45 S.E.2d 603 (1947); 66 C.J.S. *Nuisances* §§ 2, 76, 78–79 (1998); Restatement (Second) of Torts, § 821C (1979).

Although it is clear an individual plaintiff seeking to bring a tort suit for public nuisance in South Carolina must establish a special injury which is different in kind, not merely in degree from that of the general public, we are yet faced with the additional challenge of determining the more particular matter of what constitutes an injury different in kind from the injury suffered by the general public in the case of an obstruction of a public waterway.

Only a limited body of South Carolina case law exists which even tangentially discusses the issue now before us. Unlike other jurisdictions, South Carolina has no bright-line rule

indicating "[p]ersonal injuries are sufficient to show an individual's peculiar injury as required to maintain an action for public nuisance," or stated differently, "[i]njuries to a person's health are by their nature special and peculiar for the purposes of maintaining such an action." 58 Am.Jur.2d *Nuisances* § 252 (2002); *see also* Restatement (Second) of Torts § 821C ("When the public nuisance causes personal injury to the plaintiff or physical harm to his land or chattels, the harm is normally different in kind from that suffered by other members of the public and the tort action may be maintained."); Prosser, *Private Action for Public Nuisance,* 52 Va. L.Rev. at 1012 ("[T]here can now be no doubt that the nuisance action can be maintained where a public nuisance causes physical injury."); *see, e.g., Breeding v. Hensley,* 258 Va. 207, 519 S.E.2d 369 (1999) (allowing award for personal injuries resulting from bicyclist's collision with trash dumpster left by city workers to obstruct public roadway); *Gilmore v. Stanmar, Inc.,* 261 Ill.App.3d 651, 199 Ill.Dec. 189, 633 N.E.2d 985 (1994) (holding injuries sustained by motorist, who was injured in collision caused by pedestrian canopy extending into street, were different in kind from those of the general public); *City of Evansville v. Rinehart,* 142 Ind.App. 164, 233 N.E.2d 495 (1994) (upholding award of damages in public nuisance action against city for injuries minor received by falling in a ditch, cutting his knee, which then became infected because of germs in contaminated waters of ditch); *Erickson v. Sorenson,* 877 P.2d 144 (Utah Ct.App.1994) (upholding award of damages for personal injuries in public nuisance action sustained due to sign left for protection of worker at road construction site held recoverable in public nuisance suit); *Nash v. Schultz,* 417 N.W.2d 241 (Iowa Ct.App.1987) (upholding award of damages in public nuisance action where woman sustained personal injuries when she tripped and fell over sump pump hose left lying across sidewalk); *Guy v. State,* 438 A.2d 1250 (Del.Super.Ct.1981) (holding when tall growths of corn and other vegetation obstructing view of intersection were a public nuisance, injuries arising from automobile accident were different in kind from injury to general public); *Flaherty v. Great N. Ry. Co.,* 218 Minn. 488, 16 N.W.2d 553 (1944) (holding injuries sustained due to obstruction of roadway by railroad train or automobile held distinct from inter-

ference with the public right of travel); *Downes v. Silva*, 57 R.I. 343, 190 A. 42 (1937) (reversing grant of demurrer where plaintiff sustained injuries after encountering unguarded excavation site on private property very near highway); *Hammond v. Monmouth County*, 117 N.J.L. 11, 186 A. 452 (N.J. 1936) (allowing recovery for personal injuries when truck encountered unlighted and unguarded excavation site); *Baker v. City of Wheeling*, 117 W.Va. 362, 185 S.E. 842 (1936) (holding pedestrian injured by falling into an unguarded declivity below the end of a blind alley could maintain an action for public nuisance).

### D. Overcash's Special Injury

█ In this case, the circuit court found Overcash's accident did not constitute an injury different in kind from that suffered by the general public. In support of this view, the circuit court reasoned, and SCE & G argues on appeal "all who forcefully collide with an obstruction face the prospect of personal injury whether the obstruction is on a public highway or navigable stream." We find this rationale untenable.

In *Drews*, 76 S.C. at 366–67, 57 S.E. at 178, our supreme court expressly determined, when the obstruction of a public waterway was a nuisance, damage to the plaintiff's boat arising from a collision with the obstruction constituted a "special injury" sufficient to maintain a tort action for nuisance. In so holding, the court held the damages sustained in the collision were a special injury to Drews and not a general injury to the public. As we view this decision, the injury common to both Drews and the public was the inconvenience resulting from the obstruction of the right of way. The sheer possibility a boater might collide with the obstruction did not render it a nuisance. Rather, its mere presence in the public waterway constituted the public nuisance because it interfered with the public right to travel unobstructed along the waterway. *Id.*

Applying this interpretation to the instant case, we hold the circuit court erred in finding Overcash's injuries were not different in kind from those of the general public. We can discern no meaningful distinction between the essential reasoning in *Drews* and the reasoning applicable to the facts and circumstances as alleged in this case. Applying the *Drews* analysis, the public is "injured" by the creation of the illegal

obstruction in the public waterway, and Overcash sustained injuries of a wholly different kind when he collided with the dock.[4]

Moreover, we find the discussion in *Carey v. Brooks*, 19 S.C.L. (1 Hill) 365, 367–68 (Ct.App.1833), both instructive and compelling.

But if by such nuisance, the party suffer a particular damage, as if by stopping up a highway with logs, & c. [sic] his horse throws *him*, by which *he is wounded or hurt*, an action lies. [B]ut if a highway is stopped that a man is delayed in his journey a little while, and by reason thereof, he is damnified or some important affair neglected, this is not such special damage for which an action on the case will lie; but a particular damage to maintain this action, ought to be direct and not consequential; as for instance, the loss of his horse [a damage to a property interest], *or some corporal hurt in falling into a trench on the highway* [a personal injury], &c. [sic].

(Emphasis added) (internal quotations omitted). Clearly, in *Carey*, the court contemplated the precise situation we face in this case. We see no reason to ignore the clear example provided by the court. Furthermore, the court's reasoning is sound. In the *Carey* court's hypothetical, the public nuisance would be the blocking of the highway with logs, causing each and every member of the public to be delayed. The special injury would be caused if the traveler's horse threw him into the roadside ditch. Likewise, in the present case, the public nuisance was created by building a dock across a navigable waterway, causing each and every member of the public to be delayed while traveling in Lake Murray. The special injury arose when Overcash struck the dock and was injured.

---

4. We do not suggest that a personal injury will always be sufficient to meet the requirements of the special injury rule. For example, if the public nuisance complained of were the sort of nuisance that by its very nature endangers the public health, then a plaintiff injured by the nuisance would likely suffer injury of the same kind as the public in general. *See, e.g., Venuto v. Owens–Corning Fiberglas Corp.*, 22 Cal. App.3d 116, 99 Cal.Rptr. 350 (1971) (holding, in an air pollution case, where the pollution is the public nuisance itself, a personal injury of the same type caused by the mere existence of the nuisance is insufficient to sustain a cause of action); *Page v. Niagra Chem. Div. of Food Machinery & Chem. Corp.*, 68 So.2d 382 (Fla.1953) (same).

■ We further conclude the circuit court erred in ruling an injury not incidental to a property interest will not support a private action for a public nuisance. The circuit court correctly noted South Carolina public nuisance cases addressing the issue of special injury have largely been predicated on injury either directly to property or incidental to a property interest. However, the circuit court misinterpreted these cases when it concluded they limit recovery in nuisance solely to injury to property.

In its order, the circuit court cited *Crosby v. S. Ry. Co.*, 221 S.C. 135, 69 S.E.2d 209 (1952) for the proposition that "In order for a private individual to maintain a private action for damages caused by a public nuisance, the special injury must involve the property rights of the individual, and the public nuisance would then constitute a private nuisance." However, the plaintiff's cause of action in that case was founded on the allegation that the public nuisance caused a diminution in the value of his land. *Id.* at 138–39, 69 S.E.2d at 210–11. Naturally, it follows that the asserted injury different in kind from that of the general public would necessarily involve the plaintiff's property rights. *Id.* However, nothing in *Crosby* or any other authority cited by either the circuit court or SCE & G indicates an injury different in kind can exist *only* in the case of an injury to a property interest.

In this regard, SCE & G posits *Teague v. Cherokee County Mem. Hosp.*, 272 S.C. 403, 405, 252 S.E.2d 296, 297 (1979), *overruled on sovereign immunity grounds by McCall ex rel Andrews v. Batson*, 285 S.C. 243, 247, 329 S.E.2d 741, 743 (1985) for the proposition that South Carolina does not recognize a private action founded upon public nuisance when only a personal injury results.

In *Teague*, the plaintiff brought an action based in negligence for injuries she sustained when the heel of her shoe caught in a hole in a stairway of a public hospital. When the trial court granted a demurrer to the complaint based on sovereign immunity, she re-pled her action as one in nuisance. The trial court again granted a demurrer on the grounds of sovereign immunity because no allegation of interference with the use of or any damage to private property, a necessary element of private nuisance, existed in the complaint. On appeal, the plaintiff argued her action was sustainable as a

private action for personal injuries arising out of a public nuisance.

Our supreme court noted previous decisions had stripped governmental immunity from the sovereign if the danger causing the harm was in fact a nuisance, but noted this rule had never been extended to a claim for personal injuries or death. Speaking of an action for private nuisance, the court noted "[t]his position, while admittedly the minority view, is consistent with the basic rationale upon which the nuisance exception originated, namely as an action to recover for interference with the use or enjoyment of rights in land." *Id.* at 405, 252 S.E.2d at 297. The court then stated: "The advantage of this position is indicated by the confusion and inconsistency resulting in jurisdictions which have allowed tort actions for personal injuries caused by a public nuisance." Based upon these observations, SCE & G argues the *Teague* Court refused to recognize a cause of action for personal injuries arising out of a public nuisance. We disagree with this analysis.

The *Teague* Court noted that on appeal the plaintiff portrayed her private cause of action as one for special injuries suffered as a result of a public nuisance. However, the court concluded "[e]ven if the condition of the hospital stairs rose to the dignity of a nuisance, either public or private, which is tenuous at best, the basis of the appellant's claim would still have to rest upon the negligence of the hospital and would require suing the hospital in a tort action, which would find no authorization under our statutes." *Id.* at 406, 252 S.E.2d at 298. Thus, the court ruled the action was barred by the doctrine of sovereign immunity.

Significantly, in reaching this conclusion, the court referred to Prosser, *Private Action for Public Nuisance*, 52 Va. L.Rev. at 1003–05, in which Prosser noted the basis for liability for public nuisance recognized by the courts has been either the violation of a statute, as is alleged by Overcash in this case, *or* on any one of the three traditional tort bases: intent, negligence or strict liability. Unlike in this case, the facts as alleged by the plaintiff in *Teague* were susceptible to only negligence as a basis for underlying liability. Otherwise stated, no basis existed for claiming the stairway was a public nuisance. Rather, in a light most favorable to the plaintiff,

only the *condition* of the staircase was claimed as a public nuisance. Thus, as the court recognized, ultimately the plaintiff's cause of action sounded in negligence, and was barred by sovereign immunity. We do not consider this dictum to be controlling, but in any event, we do not interpret the ruling to rest on a conclusion that special injury will sustain an action for public nuisance only if it involves damage to property interests.

In the absence of any applicable authority limiting special injuries solely to injuries to property interests, we decline to interpret the South Carolina caselaw to restrict a private cause of action for public nuisance to special property damage claims.

## CONCLUSION

For the foregoing reasons, the circuit court's order dismissing Overcash's cause of action for public nuisance is reversed and the case remanded for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

STILWELL and BEATTY, JJ., concur.